EDWIN WALKER

*v.*

JOHN M. SHREVE *et al.*

1. CHANCERY—*relief against judgment at law.* The mere fact that a judgment by default in an action of trespass is for a sum much greater than it ought to have been is not, of itself, evidence of fraud on the part of the plaintiff, and the plaintiff in such judgment is not responsible for errors on the assessment of damages, so as to justify a court of equity in setting aside the judgment.

2. It is not enough that a judgment at law is unjust to entitle the defendant

to relief in equity, but it must also have been obtained without negligence on his part.

3. Any fact which proves it to be against conscience to execute the judgment, of which the injured party could not have availed himself at law, or of which he might have availed himself, but was prevented by fraud, or accident, unmixed with fraud or negligence in himself or his agent, will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such judgment.

4. The statement of a third party to a defendant in a suit, that he had arranged the matter with the plaintiff, is no sufficient excuse for not looking after the matter and making a defense at law, and a failure to make such defense, or to attend upon the assessment of damages after being notified of the taking of a default, is such inexcusable negligence as to prevent the interference of a court of equity.

APPEAL from the Circuit Court of Cook County; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Messrs. FULLER & SMITH, for the appellant.

Mr. J. D. ADAIR, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill filed by Walker to enjoin and set aside a judgment for $2,000 rendered against him by default in the circuit court of Cook county, in favor of John M. Shreve. The court below upon final hearing dismissed the bill, and the complainant appealed.

The action in which the judgment was rendered was in trespass for damages to certain dock premises of the plaintiff, in Chicago, from unloading and depositing stone thereon. It was commenced on April 29, 1873, the summons returnable on the third Monday of May, 1873; was served on the defendant, Walker, on May 5th; the declaration was filed May 8th, and on June 11, 1873, the default of the defendant was entered for want of a plea. One month afterwards, July 11, 1873, damages were assessed, and judgment entered for $2,000.

The bill alleges that Walker was engaged in getting out stone in Lemont, in the county of Cook, and bringing them

to the Chicago market for sale, and that in the fall of 1872 he contracted to deliver some 300 cords to Bailey & Co. upon certain dock premises pointed out by them; that part of these premises belonged to Adams Bros., and part to the city of Chicago, and near the city dock were dock premises belonging to John M. Shreve, the plaintiff in the suit at law; that all the stone was landed on the city dock, at the foot of Dearborn street, on the north side, except less than two canal boat loads, which were accidentally placed on the dock of Shreve; and that the usual charge for the dockage for that amount of stone would not exceed $35.

That on being served with process, Walker sought the plaintiff's attorney, and explained to him his position in the matter, and that if any one was liable it was not himself, but Bailey & Co., and that such attorney promised he would do nothing further in the suit against Walker; and that relying upon that promise he did not defend, and knew nothing of the rendition of the judgment until August 6, 1873, when demand upon the execution was made upon him, it being too late then for him to move to set aside the judgment.

The proofs sustain the allegations of the bill in reference to the use of the dock of Shreve, and the amount of stone unloaded and deposited there, and we are sufficiently satisfied of the injustice of the judgment.

Appellant insists the injustice is so gross in the respect of the vast difference between the amount recovered and the amount of the rightful claim, as to evince fraud or mistake in the obtaining of the judgment, and that upon that ground, of itself, it should be relieved against.

The plaintiff's demand in that suit was not one for the mere amount of the dockage for the use of the dock, as the argument of appellant's counsel seems to proceed upon its being, but it was for damages in trespass sustained by reason thereof.

The assessment of damages was had upon evidence given by the agent of the plaintiff, Mr. Kerfoot, whose testimony

also appears in the present case.    He testifies now that the
amount of damages sustained from the use of the dock was
fully $2,000, from the length of the time of the use, its pre-
venting the renting of the dock, and the expense of repairs
which will be necessary to repair the damage done to it.
The evidence shows that other persons besides the appellant
must have used the dock, and that the whole damage should
not be charged to him.    But Mr. Kerfoot testifies that he
could not find out that anybody else besides appellant put
stone on the dock; that he went down to it a great many
times and asked the laborers, who were delivering stone
there, to whom it belonged; that they always stated that
they did not know, but that appellant had sent them there.
The several docks in that vicinity belonging to different
owners appear to have been all connected together without
any visible marks of boundary between them.    This may
have given rise to some confusion in the matter.    We dis-
cover nothing upon which to found a charge of fraud in
taking the judgment.    There was, it is likely, error in the
court in receiving and acting upon incompetent evidence —
what the laborers at the dock told the agent — but the
plaintiff in the judgment was not chargeable with that.

It is not enough that the judgment is unjust; it must
have been obtained without negligence on the part of ap-
pellant, to entitle to relief.

The principle governing in such cases is that any fact
which proves it to be against conscience to execute the
judgment, and of which the injured party could not have
availed himself in a court of law, or of which he might
have availed himself at law, but was prevented by fraud or
accident, unmixed with any fault or negligence in himself
or his agents, will authorize a court of equity to interfere
by injunction to restrain the adverse party from availing
himself of such judgment.    *Marine Ins. Co.* v. *Hodgson*,
7 Cranch, 332 ; 2 Story's Eq. Jur., sec. 887.    In *Lucas* v.
*Spencer*, 27 Ill. 17, this court said : " Where the party has
had the opportunity of interposing his defense at law, and

his remedy in that forum is complete, and he, from carelessness or inattention, has failed to make it, courts of equity never afford relief. The law only favors the diligent. In this case the plaintiff in error had ample opportunity and means to make his defense, if he had any, in the court of law ; yet he failed to appear and make it, nor does he give any reason or excuse for his negligence. It is not the policy of the law to permit a party to slumber upon his rights, when he has the opportunity and is required to assert them in a court of justice, and then seek them in another forum." As said in *Ballance* v. *Loomis*, 22 Ill. 84, any laches of the party will prevent his obtaining relief in equity ; and in *Mellendy* v. *Austin*, 69 Ill. 15, usually a high degree of diligence will be required. *Kern* v. *Strausberger*, 71 Ill. 413.

The allegations of the bill that the attorney of the plaintiff in the suit at law promised that he would do nothing further therein, and that it was because of reliance thereon that appellant failed to make defense, is unsustained by evidence.

All the testimony that there is in that direction is that of Bailey and of appellant. The most that Bailey states is that Mr. Ashton, plaintiff's attorney, in conversation with him about a settlement some time after the suit was commenced, said that he would settle the matter after the election, which was to be on the first Monday in June, 1873, that he was busy then ; and he admits that on the second day after the election he spoke to Mr. Ashton upon the subject, and the latter refused to settle, saying it would have to take its course, but that he did not inform appellant of this. The strongest testimony that appellant gives on the point is, in one place, that he understood Mr. Ashton to say that the matter would be settled up with Mr. Bailey, and in another, that Ashton told him " he would fix it up with Bailey so it wouldn't bother me."

Mr. Ashton unqualifiedly denies the allegation of the bill in respect to himself. That, on the other hand, he repeat

edly told appellant he would have to prosecute the suit unless appellant settled the matter with Kerfoot, the agent of the plaintiff, and that appellant was the only party they looked to. He states that he never had but one conversation upon the subject with Bailey, and all there was of that was that upon meeting Bailey on the street, and informing him, in reply to his inquiry upon the subject, that he had sued Walker, Bailey remarked that " he would see Walker and have it fixed up."

The uncontradicted testimony of Mr. Ashton is that the claim was placed in his hands for suit several weeks before the suit was commenced; that before bringing it, he wrote four several letters to, and had three different interviews with, appellant upon the subject; that the latter explained how the matter was — that he only delivered the stone for Bailey & Co. at the place pointed out by them, and that he had nothing to do with it; that witness informed him that he was the man who committed the act, and that his client looked to him, and not to anybody else; that he told appellant there was no occasion to have a lawsuit, and that he would like to have him go to Kerfoot and settle it up, and that at each one of the interviews appellant promised that he would do so; that at the last interview he requested witness to ascertain what Kerfoot wanted; witness did so, and thereupon, on April 24, 1873, wrote and sent to appellant the last one of the above-named letters as follows:

" I have received Mr. Kerfoot's instructions and what he requires for the use of the dock — that is, $10.00 for each boat load of stone placed thereon. Please give the matter your immediate attention and save me the unpleasant duty of commencing a suit."

That getting no reply, he commenced the suit April 29th; that after some days appellant came to see him, and witness told him he wanted him to arrange the matter so that it should go no further, and appellant promised that he would; that several times afterward, before the default was taken,

inquiry was made of appellant if he had settled the matter, he replying that he had not, but would attend to it; that the next day after the default was taken, witness informed appellant of it, and he then promised that he would go to Kerfoot and settle it up. This was on June 12th, and the damages were not assessed and the judgment entered until about a month afterward, July 11th.

The entire evidence, we think, shows no more than a great anxiety and much urgency on the part of the plain-tiff's attorney to have a settlement made ; that he disclaimed any power or authority himself to make any settlement, and referred appellant to Kerfoot, the agent, for that purpose, and that appellant promised again and again that he would go to Mr. Kerfoot and settle. There can be no fair deduction from the testimony as a whole that, from anything which was said or done by the attorney, or by the agent, Kerfoot, appellant could have reasonably been led to forego the making of a defense. Notwithstanding the explanation which had been made by appellant of the circumstances, and the previous efforts at a settlement, the suit was brought against appellant, claiming by the summons the large amount of $5,000 damages, and he had no reason from anything said or done by the plaintiff or his attorney, or agent, to expect otherwise than that the suit would be prosecuted in due course. Doubtless appellant viewed it that the claim was not a just one as against himself, and that it belonged to Bailey & Co. to answer for it; and he might have been led by them to think that they would arrange it, or had done so, as he says Bailey told him that he had arranged it, and he supposed that he had. This probably was the expectation and reliance, but it can not be accepted as an excuse for the omission of all attention to the suit which was being prosecuted against himself alone.

Obviously the acts and conduct of Bailey & Co. are not imputable to the plaintiff in that suit, and appellant should have so understood and acted. The failure to make defense, and suffer the default to be taken, the failure to attend

upon the assessment of damages, which was not made until a month afterward, there being notice of the default immediately after it was taken, must be regarded as inexcusable neglect and inattention, to relieve from the effects of which the aid of a court of equity can not be successfully invoked.

We would be glad could we find it to be otherwise, impressed as we are with a sense of the injustice of the judgment.

The decreé of the court below, dismissing the bill, must ·be affirmed.

*Decree affirmed.*

Mr. JUSTICE DICKEY : I think the complainant ought to have the relief sought. Not only is the judgment unjust, but I think complainant was lulled into security by plaintiff's attorney, and is not chargeable with fatal negligence.