THE CITY OF CHICAGO

*v.*

J. NODECK *et al.*

*Opinion filed April 24, 1903.*

| | |
|---|---|
| 202 | 257 |
| f203 | ²321 |
| 203 | ⁴453 |
| e204 | 293 |
| 205 | ⁴529 |
| 202 | 257 |
| e207 | 66 |
| 202 | 257 |
| 214 | 391 |
| e214 | ²398 |
| 214 | 532 |

1. SPECIAL ASSESSMENTS—*when a confirmation judgment cannot be vacated.* Section 56 of Local Improvement act (Laws of 1897, p. 121,) does not authorize the court to vacate a confirmation judgment and dismiss the proceedings on motion of the city if the actual collection of the assessment has been begun; and this is true even as to property owners who have paid nothing.

2. SAME—*exceptions to rule that judgment cannot be vacated at subsequent term.* A judgment which has been obtained by fraud or which the court had no jurisdiction to enter may be vacated by the court at a subsequent term.

3. SAME—*when each confirmation judgment is based on illegal assessment.* If the whole cost of paving approaches to a viaduct which it is the duty of a railroad company, under a valid contract with the city, to pave, is spread proportionately upon every piece of property assessed in the proceeding, each confirmation judgment is based upon an illegal assessment.

4. SAME—*preliminary steps before passage of ordinance are jurisdictional.* Under the Improvement act of 1897 the preliminary steps required to be taken before the passage of the ordinance are jurisdictional, and hence if the ordinance is invalid because the estimate of cost includes illegal items, the court is without jurisdiction to enter a judgment of confirmation.

5. SAME—*error in estimate cannot be corrected after entry of judgment of confirmation.* If the estimate of the cost of an improvement includes the cost of paving approaches to a viaduct which a railroad company is bound by contract to pave, the city has no power, after the entry of a judgment of confirmation, to correct the error by excluding such approaches from the contract.

6. SAME—*when a confirmation judgment is fraudulent.* The intentional act of a city in assessing property owners for paving a portion of the street which a railroad company was legally bound to pave is a fraud against the property owners, and the court may vacate the judgment, on motion of the city, at a subsequent term.

7. EVIDENCE—*effect where stipulation refers to opinion of the Supreme Court.* If a stipulation of the parties refers to an opinion of the Supreme Court, the opinion is part of the evidence in the case.

APPEAL from the County Court of Cook county; the Hon. W. T. HODSON, Judge, presiding.

202—17

This is a petition, filed by the city of Chicago on August 10, 1901, in the county court of Cook county, praying that steps be taken to levy a special assessment for the improvement of South Canal street from the south line of West Harrison street to the northwesterly line of the right of way of the Chicago, Burlington and Quincy railroad on Lumber street, by plastering curb walls, curbing with limestone curb-stones, grading and paving with granite blocks. The petition sets out the ordinance, which describes the territory to be improved, and the character of the improvement, as follows: "South Canal street, from the south line of West Harrison street to the northwesterly line of the right of way of the Chicago, Burlington and Quincy railroad on Lumber street, except the east one-half of the roadway of South Canal street, from the south line of West Harrison street to a line parallel with and 27.83 feet north of the north line of Mather street, produced from the west, and except the west one-half of the roadway of South Canal street, from the south line of West Harrison street to a line parallel with and 240.7 feet south of the south line of West Harrison street, to be improved by plastering curb walls, curbing with limestone curb-stones, grading and paving with granite blocks." The petition also sets up a copy of the estimate of the city engineer of the cost of the proposed improvement, which is as follows:

| | |
|---|---:|
| Curb walls, plastered, lineal feet, 6420.69 @ .30c | $1,926.21 |
| Curb-stones, limestones, lineal feet, 1399.50 @ 60c | 839.70 |
| Paving with granite blocks on six inches artificial hydraulic current concrete, square yards, 16,891.81 @ $3.00. | 50,675.43 |
| Adjustment of sewers, catch-basins and man-holes | 2,058.66 |
| Total. | $55,500.00 |

Among the objections, filed by the appellees to the confirmation of the assessment roll, and the only one here relied upon, is the following, to-wit: "104.—The matters and things, sought to be determined herein, have already been adjudicated by the court, No. 23,563, wherein a judgment of confirmation was entered against the

lands of these objectors August 17, 1899, and September 28, 1899, and wherein such proceedings were had that a warrant No. 24,215, was duly issued upon such judgment, and placed in the hands of the city collector, who collected thereon about one-twentieth of the entire assessment; that the order of the court in said case, entered May 28, 1900, purporting to vacate said judgment, and to dismiss said proceedings, No. 23,563, is null and void."

Upon the trial below the city introduced in evidence the following *prima facie* proof: Recommendation of the board of local improvements; estimate of the engineer; ordinance; affidavits of mailing, posting and publishing notices; assessment roll; report of the party, appointed to make a true assessment of the cost of the improvement to the city and the property specially benefited thereby, assessing $8940.00 of the cost to the city, and $46,560.00 to the property benefited.

The appellees here, objectors below, read in evidence, in support of their objections, the following stipulation of facts, to-wit: "It is hereby stipulated and agreed by and between the petitioner and the objectors:   *   *   * That on May 22, 1899, an ordinance was passed for the curbing, grading and paving with vitrified brick of South Canal street from the south line of the street railway right of way on West Harrison street to a line parallel with and 180 feet southeasterly of the southeasterly line of Lumber street; that on June 17, 1899, a petition was filed for the confirmation of an assessment, based on said ordinance, in the county court, being No. 23,563, and an estimate of the cost thereof was filed as follows:

Plastering, curb walls, lineal feet 10,350.51 @ 50c ........ $5,175.23
Curb-stones (limestone) lineal feet 1886.13 @ 60c ......... 1,131.68
Paving with vitrified brick on 6 inches Portland cement
   concrete, sq. yds. 25,730.83 @ $2.20 ...................... 56,607.83
Adjustment of sewers, catch-basins and man-holes ....... 1,707.88
Cost of making and collecting the assessment therefor,
   6% on $64,622.65.... ....................................... 3,877.35

   Total................................................. $68,500.00

To which estimate is appended the certificate of the
city engineer and engineer of the board of local improve-
ments that such estimate does not exceed the probable
cost of the proposed improvement and the lawful ex-
pense attending the same, which estimate is dated May
22, A. D. 1899; "that on July 29, 1899, an assessment roll
was filed, in which all the cost of the improvement was
charged to the property owners and no part thereof to
the city of Chicago as public benefits; that on August 17,
1899, said assessment roll was confirmed except as to ob-
jectors; that on September 28, 1899, said assessment roll
was confirmed as to objectors; that on December 20, 1899,
a certified copy of said assessment roll was by the clerk
of the county court delivered to the city collector pursu-
ant to an order of the county court, and pursuant to the
provisions of section 61 of the Local Improvement act of
1897; that thereupon the city collector gave the notices
required by law (secs. 63 and 64, act of 1897), of the judg-
ment of confirmation of said special assessment; that on
to-wit, April 1, 1900, the city collector, pursuant to sec-
tion 65 of the Local Improvement act of 1897, made a re-
port in writing to the county clerk of all the property on
which he was unable to collect special assessments, etc.;
that on April 17, 1900, the judgment of confirmation in
said special assessment proceedings was reversed as to
appellants other than the objectors herein, on the ground
that the said ordinance was invalid for reasons stated in
the opinion of the court, which appears duly published
in the case of *Hugh McFarlane* v. *City of Chicago*, in 185
Ill., beginning at page 242; that on May 7, 1900, in conse-
quence of the opinion and judgment of the Supreme Court
of Illinois above referred to, the city council did on that
date pass an ordinance, repealing the said former im-
provement ordinance and directing the dismissal of the
petition; that, thereupon, on May 28, 1900, in accordance
with said repealing ordinance, the judgments heretofore
entered were vacated and the petition was dismissed;

that, after the said certified copy of said assessment roll was delivered to the city collector as above stated, and before the said decision of the Supreme Court, property owners, assessed in said proceeding, paid to the said city collector the sum of $6899.92 on account of the first installment of said assessment; that, after the order of reversal and opinion aforesaid, no steps were thereafter taken to collect said assessment, nor was any money accepted from any property owner on account thereof, nor was application for judgment of sale at any time applied for on said assessment; but immediately thereafter the city of Chicago commenced to refund the amounts so paid to it, and has refunded the same to all persons, who have appeared for that purpose, and produced proof of payment of said assessment to the amount of $5592.10, and has not refunded the balance of said collection for the reason only that the property owners, who paid such assessment, have not appeared to accept a refund thereof, but the city is ready and willing at any time to refund the balance of said assessment, and holds to the same in said fund as a special and separate trust fund for the purpose of making such re-payments; that no property on this appeal at any time paid any part of the assessment in case No. 23,563, which is pleaded in this case in bar; that, after said ordinance was so repealed, the board of local improvements of the city of Chicago took up for consideration the improvement of South Canal street, from the south line of West Harrison street to the north line of the Chicago, Burlington and Quincy railroad on Lumber street, and held a public hearing to determine upon the paving of the above entitled street between the points last above mentioned with granite blocks, and thereupon passed the recommendation, which appears in the record of this case, upon which the present ordinance was passed and the present proceedings based."

Thereupon objectors, by their counsel, stated their objection to the confirmation of the assessment herein

as follows, to-wit: "That the record of the proceedings in the said prior cause, No. 23,563, is, and constitutes a *res judicata*, which bars this proceeding."

The court entered an order, finding the issues in favor of the objectors below, appellees here, and against the petitioner, the city of Chicago, and sustaining the objection and refusing to enter judgment, on the ground that the former judgment of confirmation in case No. 23,563 was, and constitutes, an adjudication which bars the present proceeding, and that the orders, purporting to vacate said judgment and dismissal of said proceeding, were void, and did not remove the bar of said judgment.

Motion for a new trial was made upon the general grounds that the original judgment never constituted a *res judicata;* that the city had a right under the statute to abandon the former proceedings, and did so abandon the same, and that the county court rightfully vacated the judgment and dismissed the petition, and that therefore the former judgments, if they ever had any effect as adjudications, were deprived of that effect; and that the Supreme Court, having on April 17, 1900, in the *McFarlane case,* held that the ordinance, so far as it affected certain property then appealed, was unreasonable and oppressive and consequently void, the city council, in view of said decision, was justified in passing the repealing ordinance and in directing that the petition be dismissed; that, after the decision of the Supreme Court rendered April 17, 1900, no portion of said assessment was collected; that the county collector collected no part of the assessment; that after said reversal no steps were taken by the city to collect the assessment, nor was any money accepted from any property owner on account thereof, nor was application for judgment of sale at any time applied for under said assessment; and that, immediately after the order of reversal and opinion aforesaid, the city commenced to refund the amounts so paid to it and has refunded the same to all persons, who have ap-

peared for that purpose and produced proof of payments of said assessment, to the amount of $5592.10. The motion for new trial was overruled.

The present appeal is prosecuted from the judgment entered by the court below sustaining the objections of appellees.

EDGAR BRONSON TOLMAN, and ROBERT REDFIELD, (CHARLES M. WALKER, of counsel,) for appellant:

The court has power to set aside its judgments after the expiration of the term at which they were rendered, under the following circumstances: By consent; in conformity with an order of reversal; where the court had no jurisdiction to enter a judgment; in special assessment cases, where the city council has abandoned the improvement. 12 Am. & Eng. Ency. of Law, (2d ed.) 126-128; 1 Black on Judgments, sec. 307; *Olney* v. *Harvey*, 50 Ill. 403; *Pettus* v. *Crowe*, 3 Scam. 93; *Johnson* v. *Logan*, 68 Ill. 313; *Monroe* v. *People*, 102 id. 406; *McCartney* v. *Osburn*, 118 id. 403; Local Improvement act of 1897, sec. 56; *Gage* v. *Chicago*, 193 Ill. 108; *McChesney* v. *People*, 161 id. 110.

Under an ordinance granting permission to a railroad company to construct tracks on highways, over which they contract to construct and erect a viaduct and agree to maintain and keep in repair such viaduct and its approaches, private property cannot be assessed for the paving of said viaduct or its approaches. *McFarlane* v. *Chicago*, 185 Ill. 242; *Cummings* v. *Chicago*, 144 id. 563.

MASON & NOYES, (GEORGE A. MASON, of counsel,) for appellees:

To create a want of jurisdiction the ordinance must be based upon defective proceedings of the board of local improvements or the city council; that is to say, the jurisdictional steps required to be taken by the board of local improvements and the legislative body must be wanting in order to render the ordinance void. *Chicago* v.

*Wilder*, 184 Ill. 397; *Clarke* v. *Chicago*, 185 id. 354; *Nelson* v. *Chicago*, 196 id. 390.

It requires a clear and strong case to justify a court, even on direct attack, in holding that an ordinance passed by a municipality, apparently acting within the scope of its authority, is unreasonable, unjust and oppressive, and therefore invalid. *Warren* v. *Chicago*, 118 Ill. 329; *English* v. *Danville*, 150 id. 92; *Hawes* v. *Chicago*, 158 id. 653; *Chicago* v. *Wilson*, 195 id. 19.      ı

To render the ordinance subject to collateral attack, the defect complained of must have gone to its life. *Sternberg* v. *People*, 164 Ill. 478; *Blount* v. *People*, 188 id. 538; *Gross* v. *People*, 172 id. 571; *People* v. *Warneke*, 173 id. 42; *Rich* v. *Chicago*, 187 id. 396; *People* v. *Lingle*, 165 id. 65; *Johnson* v. *People*, 189 id. 83.

No defense or objections can be urged on collateral attack which might have been interposed in the proceedings for the making of such assessment or the application for the confirmation thereof. Local Improvement act of 1897, sec. 66; *Pipher* v. *People*, 183 Ill. 436; *Fishback* v. *People*, 191 id. 171; *Leitch* v. *People*, 183 id. 569; *Gross* v. *People*, 193 id. 260.

Collection of this assessment could not be enjoined. That illegality which results from the fact that there is no law, general or special, authorizing the assessment, will alone warrant a court of equity in enjoining its collection. *McBride* v. *Chicago*, 22 Ill. 574; *Felsenthal* v. *Johnson*, 104 id. 21; *Humphreys* v. *Nelson*, 115 id. 45; *Keigwin* v. *Drainage Comrs.* id. 347; *Camp* v. *Simpson*, 118 id. 224.

The court is without power, at a subsequent term, to vacate a judgment of confirmation, except where the judgment was entered without jurisdiction and is a nullity. *Olney* v. *Harvey*, 50 Ill. 453; *Estate of Gould* v. *Watson*, 80 Ill. App. 242; *Fish Furniture Co.* v. *Jenkins*, 82 id. 551; *Keeler* v. *People*, 160 Ill. 179.

If the void provisions of an ordinance are not inseparably connected with the valid parts, the void parts

may be rejected and the valid parts retained. *Wilbur* v. *Springfield*, 123 Ill. 395; *White* v. *Alton*, 149 id. 626; *Railroad Co.* v. *Freeport*, 151 id. 451; *Delamater* v. *Chicago*, 158 id. 575; *Railroad Co.* v. *People*, 161 id. 244.

If the estimate based on the ordinance contains improper items, they may be eliminated without rendering the assessment void. *Harts* v. *People*, 171 Ill. 458; *Sawyer* v. *Chicago*, 183 id. 57; *Noonan* v. *People*, 183 id. 52; *Shannon* v. *Hinsdale*, 180 id. 202.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The present assessment proceeding was instituted for the purpose of defraying the cost of paving a part of South Canal street with granite blocks. The appellees, objectors below, introduced, as a defense under their objections, a former judgment, confirming a special assessment levied for the purpose of paving a large part of South Canal street with vitrified brick, and relied upon such former judgment as a *res judicata*, and set the same up as a bar to the prosecution of the present proceeding.

The appellant relies, for reversal of the judgment of the court below, upon the contention, first, that the judgment of confirmation in the former proceeding for paving South Canal street with brick is not an adjudication, which bars the proceeding at bar for the confirmation of an assessment for paving a portion of the same territory with granite blocks; and, second, that, if such former proceeding could otherwise be considered as such adjudication, the effect of that adjudication has been removed by the subsequent vacation of the former judgment.

Assuming that the original judgment introduced in evidence is an adjudication which bars the present proceeding, we will consider the question whether such former judgment of confirmation has been properly vacated and set aside. It will be observed, that the former judgment of confirmation, thus relied upon as *res judicata*,

was entered, except as to objectors, on August 17, 1899, and as to objectors, on September 28, 1899, whereas the judgments of confirmation, so entered, were not vacated, and the petition for the levying of the assessment was not dismissed, until May 28, 1900, the ordinance, repealing the ordinance providing for the original improvement, and directing the dismissal of the petition, having been passed on May 7, 1900. It thus appears, that such former judgment of confirmation was not vacated during the term at which it was entered, but at a subsequent term. The point is made by the appellees, that the county court had no power to set aside the original judgment of con-firmation at a term subsequent to that, at which such judgment was rendered. And such is the general rule. (*Rich* v. *City of Chicago*, 187 Ill. 396; *Keeler* v. *People*, 160 id. 179; *McChesney* v. *City of Chicago*, 161 id. 110). Appellant, however, claims that the county court had power to vacate the judgment at a subsequent term by reason of the authority conferred by section 56 of the Local Improvement act. (Laws of 1897, p. 121). Section 56 is set out in full in *City of Chicago* v. *Nicholes*, 192 Ill. 489; and, as to the material parts thereof, in *McChesney* v. *City of Chicago*, 188 Ill. 423. Section 56, thus referred to, contains this provision: "Nothing in this section contained shall in-terfere with the right of a petitioner to dismiss its pro-ceedings, and for that purpose to vacate such judgment at its election at any time before commencing the actual collection of such assessment," etc. It would seem to be clear from this language, that the city would have no right to vacate the judgment, confirming an assessment, after the actual collection of the assessment had been begun. It appears from the agreed stipulation of facts, that the city collector did collect from the property own-ers the sum of $6899.92 on account of the first installment of said assessment. It is true, that the present objectors, who are appellees herein, paid no part of the assessment levied upon their property, none of the sum collected

having been collected from them. It also appears that, when this court reversed the former judgment of confirmation as to certain property owners, who objected to such confirmation and took an appeal from such judgment of confirmation, the city took no further steps to collect the assessment, and accepted no money from any property owner on account thereof, and made no application for judgment of sale, but immediately commenced to refund to the property owners the amounts, which had been paid by them on account of such assessment, and did refund the same to the amount of $5592.10, and holds the balance of the amount, so paid, as a special trust fund to be re-paid to the property owners, who shall apply for the re-payment of the same. But, notwithstanding all this, the fact remains that the county court did not, upon the application of the city, vacate the judgment in question until after the actual collection of the assessment had been commenced. The question is not whether the present appellees, objectors herein, were injured by the vacation of the judgment after the commencement of the collection of the assessment, but the question is one of power as to the right of the court to vacate its judgment under the statute after the term, at which the judgment was rendered, had passed. The Improvement act of June 14, 1897, is a statutory proceeding, and, as it delegates the power to levy assessments, it must be strictly construed. So far as the power to vacate the judgment is to be regarded as conferred by section 56 of the Improvement act, it cannot be said that it exists after the collection of the assessment has been begun. Nor can anything, said by this court in construing section 56, be interpreted as holding that the trial court could properly enter an order, vacating such a judgment after the collection of the assessment had been begun. All that has been said upon that subject must be regarded as being subject to the provision, that the vacation of the judgment occurred before the commencement

of the collection of the assessment. (*McChesney* v. *City of Chicago*, 188 Ill. 423; *Gage* v. *City of Chicago*, 193 id. 108).

But, while the vacation of the judgment at a subsequent term after the collection of the assessment had been begun may not have been authorized by the terms of section 56 of the Improvement act, yet the rule, that a court has no power to set aside its judgment at a subsequent term, is subject to several exceptions, independently of any authority conferred by section 56. One of these exceptions is, that a court has power to vacate a judgment at any time after the expiration of the term, at which it was rendered, where the court was without jurisdiction to enter such judgment. (1 Black on Judgments, sec. 307; 17 Am. & Eng. Ency. of Law,—2d ed.— p. 825; *City of Olney* v. *Harvey*, 50 Ill. 453; *Orr* v. *Howard*, 4 Scam. 559). Another exception to the rule is that, where a judgment has been obtained through fraud, such fact constitutes a sufficient reason for vacating it after the term at which it was rendered. (17 Am. & Eng. Ency. of Law,—2d ed.—p. 827; *Walker* v. *Shreve*, 87 Ill. 474; *Chicago Building Society* v. *Haas*, 111 id. 176; *Ward* v. *Durham*, 134 id. 195; *Mitchell* v. *Shaneberg*, 149 id. 420; *Wright* v. *Simpson*, 200 id. 56).

The question then arises, whether the vacation at a subsequent term of the judgment of confirmation, here set up as a bar, comes within either or both of the exceptions to the general rule, as above stated.

The ordinance, passed on May 22, 1899, for a pavement with vitrified brick, provided for the assessment of a part of South Canal street, which, by contract with the city, the Chicago, Burlington and Quincy Railroad Company was bound to pave and keep in repair, and which the city had no right to compel the property owners to pave by special assessment. This precise question was decided by this court in reference to this very ordinance, and the improvement therein provided for, in the case of *McFarlane* v. *City of Chicago*, 185 Ill. 242. In the latter

case, McFarlane objected to the confirmation of the assessment as to his property, upon the ground that the ordinance provided for the paving of the approaches to the Polk street and Harrison street viaducts, and that the Chicago, Burlington and Quincy Railroad Company was under obligations to maintain and keep the same in repair without expense or cost to the city of Chicago; that this provision of the railroad company's franchise, obligating it to maintain and keep in repair the approaches to said viaducts, obligated it to pave the street at that point, and that, therefore, the assessment could not be enforced against him, because he and other property owners were thereby assessed for work, which the railroad company was bound to perform at its own expense. This objection was held to be valid. We there said (p. 246): "The evidence shows that, within the limits of the improvement provided by the ordinance, there are three approaches leading to the viaducts on Canal street, which extend east and west on streets intersecting Canal street. One of the approaches is at the north end of the improvement on Canal street and leads up to the viaduct on Harrison street; the other two approaches lead up to the viaduct on Polk street. These approaches are each about 300 feet long. They are the full width of the pavement, and are supported by retaining walls of stone masonry, making about 900 lineal feet of pavement upon the approaches, for which appellants insist they should not be assessed. * * * Under the ordinance, granting permission to the Chicago, Burlington and Quincy Railroad Company to construct tracks between West Harrison and West Twelfth streets on the express conditions that the railroad company should pay the expense of constructing and erecting the viaduct on Polk street, with all proper laterals and approaches necessary thereto, and all viaducts over its tracks, and of maintaining and keeping in repair such viaducts and approaches, it was the duty of that railway company, or other railroads,

as provided in the ordinance, to pave the approaches on Canal street to the Polk street and Harrison street viaducts, and it was error to assess the appellants' property for the paving of these approaches."

Undoubtedly, the judgment of reversal only applied to the parties, objecting to the confirmation and taking the appeal. In the *McFarlane case* the judgment of confirmation as to the property of appellants, Hugh McFarlane and William O. Tegtmeyer, was reversed. As we understand, the present appellees filed no objections in the *McFarlane case*, and judgment by default was entered against them. But the stipulation, introduced in evidence in this case by the appellees upon the trial below, shows that the same reason for holding the ordinance and assessment invalid as to the property of McFarlane applies also to the property of the appellees, and of all the other property owners. We do not deem it necessary to discuss the question, whether or not the want of jurisdiction of the county court to render judgment against the property of appellees must appear from the face of the judgment itself, and not from matter outside of it. By the terms of the stipulation, the opinion of this court in *McFarlane* v. *City of Chicago, supra*, is referred to and must be regarded as a part of the evidence in this case. That opinion sets forth the ordinance of the city of Chicago, passed on December 20, 1880, which granted permission to the Chicago, Burlington and Quincy Railroad Company to construct tracks between West Harrison street and West Twelfth street upon the express condition above named. The appellees, therefore, in introducing in evidence the judgment, upon which they rely as a bar, have also at the same time introduced, in connection therewith, the ordinance of the city, which required the railroad company to pave the approaches on Canal street, as above described. When the ordinance, providing for the paving of Canal street with vitrified brick, including the part of the street which the railroad company was

obliged to pave, was introduced in connection with, and accompanied by, the ordinance of December 20, 1880, it was proven by the appellees themselves, that the ordinance was invalid and void, so far as it assessed the property owners to pay for a pavement, which the railroad company was bound to pay for. The cost of paving these approaches, which it was the duty of the railroad company to pave, was not levied exclusively against the property abutting or adjacent thereto, but was spread proportionately on every piece of property, which was assessed in the proceeding. Each lot or parcel of land on the assessment roll was assessed its proportionate share of the cost of the entire improvement, including the approaches which the railroad company was under obligations to pay. Therefore, every judgment, entered in the proceeding, whether against the property of McFarlane, or of the other property owners, was based on an illegal assessment, including an item that was improper, to-wit, the paving of the approaches to the viaducts. In connection with the ordinance, the appellees also introduced, as a part of their stipulated statement of facts, the estimate of the cost of the improvement, as made by the engineer under the provisions of the Improvement act of 1897. This estimate shows upon its face that, in fixing upon the total amount of the cost, the engineer added in, as a part of the improvement, the paving of the approaches, which the railroad company had made a contract to keep in repair, and to pave.

This court has decided that, where an ordinance, accepted by a street railroad company, has required such company to pave at its own cost that part of the street occupied by its tracks, the whole cost of the pavement could not be assessed to private owners, and that the objection, that the assessment, levied upon the property of the private owners, required them to pay for that part of the pavement, which the street railroad company had contracted to pave, was a valid objection. In *Sawyer* v.

*City of Chicago,* 183 Ill. 57, we said upon this subject: "In the assessment roll the entire cost of the improvement, including the 16 feet which the street railway company agreed to pave when required, was assessed against the lots and tracts of land. That agreement was made upon a good consideration, and if it had not been abrogated or the railroad company released from its obligations, the cost of the improvement of the 16 feet should not have been included in the estimate or levied upon the property of individuals." The principle announced is the same as that which is involved in the original ordinance under consideration in the case at bar.

The same doctrine was announced in *City of Chicago* v. *Cummings,* 144 Ill. 446, where, by ordinance of a city, a street railway company was required to pave its right of way, being 16 feet along a street, and by another ordinance the paving of the street its entire width was required, and the commissioners, appointed for that purpose, reported that they had made an estimate of the cost of such improvement; and it was there held that the cost of paving the center 16 feet of the street was wrongfully included in the estimate of the cost of the improvement to be charged upon the property benefited, and that judgment of confirmation of the assessment roll was properly denied. It is true that, in the latter case, it was said that the ordinance, providing for the improvement including the 16 feet, was not necessarily void. But the methods, suggested in *City of Chicago* v. *Cummings, supra,* for the correction of the error in the ordinance, were only applicable under the old proceedings for the assessment of property, as they existed prior to the passage of the Improvement act of June, 1897. Under the latter act, the estimate of the cost of the improvement, as made by the city engineer, and all the preliminary steps required to be taken before the passage of the ordinance, are jurisdictional in their character. Where the ordinance is invalid for the want of

a correct estimate of the cost of the improvement, the court has no jurisdiction to entertain the proceeding. (*Clarke* v. *City of Chicago*, 185 Ill. 354; *City of Chicago* v. *Wilder*, 184 id. 397; *Bass* v. *City of Chicago*, 195 id. 109). The city could not change the termini of the improvement, after the judgment of confirmation was rendered, by directing the contractor not to pave the approaches, or by entering into a contract for paving that portion of the street, which would remain after deducting the approaches to the viaduct; or, in other words, by entering into a contract for paving a less portion of the street than that described in the ordinance. Such changes would justify the property owners in contesting the payment of their assessments, upon the ground that the improvement so constructed was a different improvement from that described in the ordinance. (*People ex rel.* v. *Whidden*, 191 Ill. 374; *Pells* v. *People*, 159 id. 580; *Church* v. *People*, 174 id. 366).

The city of Chicago certainly had knowledge, when it passed the improvement ordinance of May 22, 1899, that the Chicago, Burlington and Quincy Railroad Company was under obligations to pave the approaches to the viaduct, the pavement of which the ordinance in question required the property owners to pay for. The ordinance of December 20, 1880, granting the franchise, already referred to, to the Chicago, Burlington and Quincy Railroad Company, was in force, and its provisions must have been known to the city authorities. Notwithstanding the arrangement thus made with the railroad company, and notwithstanding the knowledge of that arrangement which the city is supposed to have had, the city council passed, and the city authorities have sought to enforce, an ordinance which required property owners to pay for a pavement, which they could not be assessed for, and which a railroad company was bound to pay for. We cannot escape the conclusion, that the original judgment of confirmation, so far as it sought

202—18

to compel these property owners to pay for the pavement of these viaducts, was a fraudulent judgment. It was a fraud against the property owners to seek to make them pay for that part of the improvement, which the railroad company was bound to pay for.

Inasmuch, therefore, as the original judgment of confirmation here under consideration was based upon such an ordinance as has already been described, the court was without jurisdiction to enter such judgment. This being so, the court had a right to vacate the judgment at a term subsequent to its entry. But, even if there were any doubt as to the question whether or not the court had jurisdiction to enter the judgment, there can be no doubt that the making of the estimate, which included the paving of these approaches to the viaduct, and the passage of the ordinance, which required the property owners to pay for such part of the pavement, amounted to a fraud against the property owners. This element of fraud entered so largely into the judgment itself, that it justified the court in vacating the judgment at a term subsequent to the term, at which it was entered.

For the reasons above stated, we are of the opinion that the court below erred in sustaining the objections made to the confirmation of the judgment in the present case. It is, therefore, unnecessary to discuss the question, so elaborately argued by counsel, whether or not the former judgment of confirmation constitutes a *res judicata*, and could be set up as a bar to the present proceeding, if there were no such defects in the original judgment of confirmation, as have already been pointed out.

Accordingly, the judgment of the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.    *Reversed and remanded.*