People of the State of Illinois, Appellee, v. Alphonse Mazurski, Appellant.

Gen. No. 40,310.

Opinion filed January 19, 1939.   Rehearing denied February 6, 1939.

L. A. SHERWIN, of Chicago, for appellant.

THOMAS J. COURTNEY, State's Attorney, for appellee; EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE and BLAIR L. VARNES, Assistant State's Attorneys, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

After a trial by the court without a jury the defendant, Alphonse Mazurski, was found guilty on December 14, 1937, of having raped one Pearl Szumski, a 12-year-old girl, as charged in an indictment returned to the criminal court of Cook county.  On January 4, 1938, after denying defendant's motions for a new trial and in arrest of judgment, the court entered judgment, sentencing him to imprisonment for one year in the Illinois State Penitentiary at Joliet.  January 19, 1938, upon defendant's petition to vacate the judg-

ment on the ground of newly discovered evidence, the court, after hearing the testimony of the two witnesses presented, Jane Gilarski and Steve Stanislawski, denied said petition. Although allowed until April 2, 1938, for the certification and filing of a bill of exceptions, defendant did not present such a bill for certification and failed to prosecute a writ of error to the Supreme Court to review the judgment entered against him. Defendant, represented by new (present) counsel, then made a motion in the nature of a writ of error *coram nobis* under section 72 of the Practice Act to vacate the judgment. This motion was supported by defendant's sworn petition filed May 16, 1938, and an additional sworn petition filed by him May 23, 1938, *nunc pro tunc,* as of May 16, 1938, as well as by the affidavits of numerous persons attached to said petitions. The State's attorney's written motion to dismiss defendant's petition to vacate was sustained and said petition was ordered dismissed on June 6, 1938. Defendant prosecutes this appeal from the order of June 6, 1938, dismissing his petition to vacate the judgment.

It appeared that Pearl Szumski and two other young girls were playing around a gasoline station at 83rd street and Essex avenue, Chicago, and on the streets and sidewalks in that vicinity on the evening of September 18, 1937; that Pearl having told the others that she was going to meet a man in an automobile, ran toward Kingston avenue and the two girls followed her; that they caught up with her as 82nd street and Kingston avenue, where an automobile stopped about four feet from them and the driver of same invited Pearl into his car and drove away with her about 7:30 p.m.; that a short time later the two girls who had been with Pearl met her older sister, Sophie Gouwens, and told her what happened; that she took the girls to the aforesaid gas station to ascertain, if

possible, the identity of the man who had driven away with Pearl; that one Stanley Jablonski, who happened to be at the gas station, drove Sophie Gouwens and the girls around until about 8:45 p.m. in an unavailing search for Pearl; that when Sophie Gouwens returned to her home Pearl was there; and that after the latter had told her mother and sister that defendant was the man who had driven her away in his car and that he had ravished her, her sister, Sophie complained to the police. Defendant having heard that the police were searching for him went to the police station about 11:30 p.m. and was placed under arrest.

In his original petition to vacate, after charging that he was a victim of "wrongful identity," defendant alleged *inter alia* that he "now remembers there was a wedding going on four or five doors away from 8332 Essex avenue"; that at least ten people saw him and his automobile on the evening in question in front of 8332 Essex avenue, during all of the time between 7:30 p.m. and about 9 p.m.; and that "Pearl Szumski, when petitioner first voluntarily came in at the police station, said petitioner was not the man who had taken her out riding." Attached to the petition was Pearl Szumski's affidavit as follows :

"Pearl Szumanski [Szumski] being first duly sworn on oath deposes and says that she is the complainant who filed a complaint against Alphonse Mazurski, charging him with rape. Affiant now says that she was not certain at the time she made the complaint that it was Alphonse Mazurski. That after due and mature consideration, affiant is now certain that it was not Alphonse Mazurski because the man who attacked affiant was about thirty years of age, wore a grey hat, a dark overcoat and a light suit, whereas, the said Alphonse Mazurski is twenty-six years of age and is a much lighter complexioned man and younger.

"Affiant is making this affidavit to correct a wrong which has been done Alphonse Mazurski and joins in with the request that a further hearing be had in this matter so that the said Alphonse Mazurski may be exonerated." Then followed affidavits of Pearl's mother and sister stating that from their talks with Pearl they are convinced that defendant was not the man who attacked her. There is interwoven throughout defendant's petition and the numerous affidavits attached thereto allegations of fact sufficient, if true, to establish a perfect alibi for every moment of his time from his arrival at work before 8 a.m. on the morning of September 18, 1937, until he went to the police station about 11:30 p.m. that night.

Defendant's additional petition to vacate filed May 23, 1938, charged the State's attorney with suppressing certain material evidence other than that hereinafter discussed, when the case was tried and with failing to advise the court that "during the month of March, 1938, while it was still time for petitioner to perfect his appeal to the Supreme court, the prosecutrix's sister Sophie Gouwens appeared before the assistant state's attorney who tried this case and informed him of the doubt of herself and of the prosecutrix as to defendant's guilt and his identity, honestly attempting to correct a mistake, and because of such doubt demanded that this court be advised and defendant cleared of the crime charged against him . . . that said Sophie Gouwens was asked by the assistant state's attorney how much money she had received from petitioner, that said Sophie informed said assistant state's attorney that she had received no money from petitioner, that she did so freely and voluntarily because, on deliberation, the prosecutrix and said Sophie Gouwens were not sure of petitioner's guilt and did not want an innocent man sent to the penitentiary."

Following are substantially the facts alleged in defendant's sworn petition to vacate and stated in the affidavits accompanying same as to purported newly discovered evidence to establish his alibi and to show that he could not possibly have committed the crime charged. Defendant brought his car to the gas station at 83rd street and Essex avenue about 5 p.m. on September 18, 1937, and left it there to be washed. He called for same at 6 p.m., accompanied by his fiancee, Jane Wesolowski, and his brother Mike. Mike then drove Jane to the Balog home, 8332 Essex avenue, where defendant promised to call for her later, after he had driven his shop foreman, John Warren, to Goldblatt's South Chicago store. He picked up Warren shortly after 6 p.m. and drove to Goldblatt's store where, at 7 p.m., during his shopping expedition with Warren, he met Gertrude Becker, with whom Jane Wesolowski lived. After Warren finished his shopping defendant drove him to his home, reaching same shortly before 7:30 p.m. He then drove to Mrs. Becker's home, according to her, about 7:35 p.m., to call for his fiancee (although he had previously arranged to call for her at the Balog home), and, upon being informed that she was not at home, he again drove to the gas station at 83rd street and Essex avenue, reaching there about 7:40 p.m. After a brief conversation with Jablonski at the gas station defendant drove directly to the Balog home at 8332 Essex avenue, sounded his horn and his fiancee, accompanied by Frank Balog and his sister, Norma, came out to his automobile. Jane Wesolowski got in the car with him and the Balogs stood on the sidewalk alongside the automobile. All four talked and watched a wedding celebration a few doors away continuously until 8:45 p. m. or 9 p. m., when defendant drove away with his fiancee, who remained with him constantly until he returned to his home about 11:30 p. m.

We have carefully examined defendant's petition and the accompanying affidavits of those who now claim to have been with him during all or some of the time covered by his alleged alibi and are unable to find therein a single allegation of newly discovered evidence. The allegation in his petition that ''he now remembers that there was a wedding going on four or five doors away from 8332 Essex avenue'' is futile for any purpose. It certainly cannot be considered in the category of newly discovered evidence. A present recollection of a fact previously known could not possibly be newly discovered evidence of such fact.

Defendant was arrested September 18, 1937. He was indicted October 14, 1937, and on December 14, 1937, he was tried and found guilty of statutory rape. Judgment was entered against him January 4, 1938. If his fiancee and six or seven close friends were with him and could account for his whereabouts from the time Pearl got into the car with the man who raped her until after she returned to her home, as he and they now assert, it is strange and beyond understanding why their knowledge of his presence with them did not remain uppermost in their minds from the moment they learned of defendant's arrest on the very night the crime was committed until his trial almost three months thereafter. In so far as the record discloses the only one of the witnesses, whose alibi affidavits are now presented as newly discovered evidence, who testified at defendant's trial, was Stanley Jablonski, who states in his affidavit that he ''was not permitted to tell all he knew at the trial.'' This is a reflection on the trial judge, who it must be assumed, in the absence of a showing to the contrary, gave defendant a fair trial. The foregoing quoted statement could only have been injected into Jablonski's affidavit to account for the disparity between his testimony at the trial and the

statements in his affidavit. Steve Stanislawski, the gas station attendant, testified January 19, 1938, at the hearing before Judge John C. Lewe on defendant's motion for a new trial made within the judgment term on the ground of newly discovered evidence, that the last time he saw defendant on the evening in question was between 7:15 p. m. and 7:30 p. m. and he is now made to say in his affidavit that "about 7:30 p. m. affiant saw Alphonse Mazurski again, he was on his way in his car to pick up his girl Jane Wesolowski at 8332 Essex avenue, Chicago, and affiant saw Alphonse's car from then until about 8:45 p. m. parked in front of the home of Frank and Norma Balog at 8332 Essex Avenue. Alphonse and Jane were in the car, and Frank and Norma were near the car talking to them. About 8:45 p. m. Alphonse and Jane drove away."

The allegation of defendant's petition that it was not until May, 1938, that he learned for the first time of the matters set forth therein and stated in the affidavits of Jane Wesolowski, his fiancee, Frank Balog, Norma Balog, Stanley Jablonski, Steve Stanislawski, Gertrude Becker and John Warren is absurd on its face. If he was in the company of his fiancee from 7:30 p. m. until 11:30 p. m. on September 18, 1937, as both now say he was, he surely must have known that fact every moment from the time of his arrest until his trial. If he was in the company of the Balogs continuously from about 7:30 p. m. until about 9 p. m. on that evening, as he and they now say he was, he surely must have known that fact and remembered it constantly. Having been in the company of Warren from a little after 6 p. m. until nearly 7:30 p. m. that evening, as he and Warren now state, it is difficult to conceive how defendant could have knowledge of that fact now and not have had such knowledge from the time of his arrest until the time of his trial. Having called for his

fiancee at Mrs. Becker's home at about 7:35 p. m. that night, he must have remembered that. Having been at the gas station as many times as he now states that he was that evening and conversed with his friends Jablonski and Stanislawski for the last time at about 7:30 p. m., confronted as he was with a very serious criminal charge, he and they must have known of such occurrence prior to May, 1938. The conclusion is irresistible that the matters presented in defendant's petition to vacate and in the affidavits attached thereto in the guise of newly discovered evidence are palpably false. If such matters now presented by way of an alibi for defendant were true, not only would defendant have produced these alleged alibi witnesses in court at his trial, but his fiancee and the others mentioned would have been anxious and eager to establish his innocence. The allegations of defendant's petition and the statements in the affidavits of the aforementioned persons submitted with same are so obviously improbable as regards defendant's alibi as to cast doubt upon the good faith of this entire proceeding.

It is insisted repeatedly in defendant's brief that by the motion to dismiss, the People admitted "that defendant had no knowledge of this newly discovered evidence at the time of the trial, and therefore could not have produced it at the trial, and standing uncontradicted the court should have, where the People refuse to file an answer, set the judgment of conviction aside and granted a new trial." It is, of course, the established rule that a motion to strike or to dismiss a petition admits the well pleaded allegations of fact contained therein as did a demurrer under the former practice. But how could the People's motion to dismiss admit that defendant had no knowledge of what he characterizes as newly discovered evidence, establishing an alibi for him, when practically every allega-

tion of his original petition shows conclusively that he must have had knowledge of such alleged evidence, if it was true, since the very night of his arrest, as has been heretofore demonstrated? Defendant's assertions that the persons heretofore named were with him on the evening of September 18, 1937, at the times alleged, and that "he had no knowledge" that they were with him until May, 1938, are ridiculous, preposterous and absolutely inconsistent and, of course, could not be true.

The following statement by his counsel is found in defendant's brief: "The petitions charge, and is supported by the affidavit of the prosecutrix that prior to or at the time of the trial, she had informed the Assistant State's Attorney that she was not certain that it was the defendant who had taken her for the ride and had attacked her. This fact defendant charges, he first discovered after May 1, 1938, and that it was suppressed by the People at the time of the trial. This has not been denied by the People. The petitions charge, and it has not been denied, that notwithstanding this disclosure by the prosecutrix to the People, that the prosecutrix was permitted on the trial to take oath and to falsely testify that it was the defendant who had taken her for the ride and attacked her." This is a deliberate charge that the assistant State's attorney assigned to the prosecution of the indictment against defendant, with full knowledge of the fact at the time of the trial that the prosecutrix was not certain of defendant's identity, withheld such information from the trial court and caused or permitted Pearl Szumski to testify falsely that it was the defendant who had taken her for a ride in his automobile and criminally assaulted her. This charge, if true, would constitute gross fraud and furnish sufficient legal ground for the allowance of defendant's motion to

vacate. However, it is just one of the many distorted charges and misstatements found in defendant's brief and finds no support in his petition to vacate or in the affidavit of Pearl Szumski. We have searched defendant's petition in vain for any allegation that Pearl Szumski, prior to or at the time of Mazurski's trial, informed the assistant State's attorney that she was not certain of defendant's identity and that such information was suppressed and not revealed to the court. Neither does Pearl Szumski's affidavit support this vicious charge. As orginally drawn and certainly not by Pearl, her affidavit, heretofore set forth, did contain this charge, but it will be noted that the language "and at the time of the trial before His Honor Judge Lewe, affiant informed the State's attorney that she was not certain that it was Alphonse Mazurski" was stricken from same. It is not disclosed by the record whether the above quoted language was stricken from Pearl's affidavit by the court or whether defendant's counsel ran a line through such language before he filed the affidavit, but said affidavit is certified to this court showing the language referred to as having been deleted. Defendant's counsel properly abstracted the affidavit, omitting therefrom the deleted language, but in defendant's reply brief said counsel charges in effect that while Pearl's affidavit was in the hands of the assistant State's attorney for examination along with the petition to vacate and the other affidavits, the language above referred to in Pearl's affidavit was surreptitiously and fraudulently deleted. He makes this charge in spite of the fact that he made absolutely no objection in the trial court to the certification to this court of Pearl's affidavit as deleted. Then, after quoting Pearl's affidavit, as if it had not been deleted, counsel makes this statement in the reply brief: "The People filed no answer to the charges of fraud and suppression of material facts from the court and de-

fendant, and did not contradict the facts in the prosecutrix's affidavit; that she had advised the Assistant State's Attorney, at the time of trial, that she was not certain that it was the defendant who had attacked her." Here counsel again deliberately attacks the integrity of the assistant State's attorney without the slightest justification. Such conduct on the part of an attorney is to say the least unethical. We repeat that there was no charge in defendant's petition or statement in Pearl Szumski's affidavit that prior to or at the time of the trial she informed the assistant State's attorney that she was not certain that defendant was the man who attacked her.

The petition to vacate contains allegations as to additional fraudulent acts of the assistant State's attorney and others and as to perjury committed by the prosecutrix in her testimony upon the trial of defendant. We consider said allegations even more lacking in merit than those heretofore discussed, and in view of what has already been shown we feel that analysis and discussion of such other allegations would serve no useful purpose. If the virtue of defendant's claims as presented in this cause were to be measured solely in the light of the method and manner of their advocacy, they would, indeed, be without merit.

It was unnecessary to the decision of this cause that we discuss at length, as we have, counsel's attempt to impose upon and mislead the trial court and this court, but it was so glaring and flagrant as to render it imperative that we call attention to same. Every question of law which defendant sought to raise in his petition to vacate or which is argued in his brief has long been settled in this State. In *People v. Drysch,* 311 Ill. 342, our Supreme Court said at pp. 348–350:

"The defendant argues the proposition that where a verdict is obtained by the admitted perjury of a witness it may be ground for vacating the judgment even

after the judgment term, citing *City of Chicago v. Nodeck,* 202 Ill. 257. It is held in that case that a court has power to vacate a judgment at any time after the expiration of the term where the court was without jurisdiction to enter the judgment, and also that where a judgment has been obtained through fraud, such fact constitutes a sufficient reason for vacating it after the term in which it was rendered. The fraud, however, must be a fraud committed by one of the parties on the court and not the perjury of a witness. In the case cited the fraud was the fraud of the city of Chicago, one of the parties to the suit. Granting the two exceptions of want of jurisdiction and fraud by the successful party, the rule is otherwise universal that the jurisdiction of the court to modify, change or set aside a final judgment ceases with the expiration of the term. . . .

"The plaintiff in error insists that the motion to vacate was in the nature of a writ of error *coram nobis.* If it be admitted that this writ is applicable to criminal cases, the errors of fact which could be made the basis for it were not errors upon such questions of fact as arose on the pleadings, upon which issue was or might have been joined, or such questions of fact as constituted the basis of the cause of action or defense upon the merits of the case. (*Marabia v. Mary Thompson Hospital,* 309 Ill. 147.) The writ does not lie to determine a question of fact which has been adjudicated, even though decided wrongly, (*Beard v. State,* 81 Ark. 515; *Hamlin v. State,* 67 Kan. 724; *State v. Armstrong,* 41 Wash. 601; *State v. Stanley,* 225 Mo. 525;) nor for alleged false testimony at the trial, (*Asbell v. State,* 62 Kan. 209; *Wilson v. State,* 46 Wash. 416;) nor for newly discovered evidence. (*Asbell v. State, supra.*) The motion to vacate the judgment was therefore properly denied."

The ultimate purpose of every allegation of defendant's petition was to question the establishment of his identity as the man who committed the crime charged. His identity was one of the material questions of fact which constituted the basis of his indictment, as well as his defense upon his trial on such indictment and, as was stated in the *Drysch* case, errors of fact which may be made the basis for a motion to vacate in the nature of a writ of error *coram nobis* "were not errors upon . . . such questions of fact as constituted the basis of the cause of action or defense upon the merits of the case." Neither does such a motion lie "for alleged false testimony at the trial" except where such testimony is given by one of the parties to the proceeding and constitutes fraud, "nor for newly discovered evidence."

We have carefully considered the other points urged but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons stated herein the judgment of the criminal court is affirmed.

*Affirmed.*

BURKE, P. J., and FRIEND, J., concur.