HARRY L. HOLLISTER, Appellant, vs. MARIE L. SOBRA, Appellee.

*Opinion filed October 16, 1914.*

1. INJUNCTION—*fraud for which collection of judgment will be enjoined must be in procuring the judgment.* The fraud which will justify a court of equity in enjoining the collection of a judgment must be in the procurement of the judgment, and if there be fraud entering into the cause of action which vitiates it, that defense must be interposed in the action at law unless the party was by fraud prevented from interposing it.

2. SAME—*party seeking to enjoin collection of judgment must be free from negligence.* While equity has the power to grant relief against a judgment obtained through fraud, accident or mistake, yet it is essential that complainant be free from negligence.

3. SAME—*when bill to enjoin collection of judgment is properly dismissed.* A bill to enjoin the collection of a judgment based upon a promisory note is properly dismissed, where the allegations of fraud are directed to the circumstances under which the note was given and are based upon alleged misrepresentation as to matters which were either matters of public record or facts which the complainant could have ascertained by the exercise of ordinary diligence.

4. SAME—*section 8 of Injunction act governs award of damages on dissolving injunction against collection of judgment.* Section 8 of the Injunction act, providing that. in case an injunction against the collection of a judgment is dissolved the complainant shall pay, exclusive of legal interest and costs, such damages as the court shall award, not exceeding ten per cent on such part of the judgment as may be released from the injunction, controls in case of the dissolution of injunctions against collecting judgments, and section 12 of said act does not apply.

5. SAME—*the provision for damages in section 8 of the Injunction act was intended as a penalty.* The provision for damages in section 8 of the Injunction act was intended as a penalty to be imposed upon a judgment debtor who wrongfully sues out an injunction to restrain the collection of the judgment, and under such section it is not necessary that the award of damages be based upon suggestion of damages and proof, as in the case of the compensatory damages provided for in section 12 of said act. (*Reed v. New York Exchange Bank,* 230 Ill. 50, overruled.)

VICKERS, J., dissenting.

APPEAL from the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

ELMER D. BROTHERS, (WINSTON, PAYNE, STRAWN & SHAW, of counsel,) for appellant.

EMIL A. MEYER, (EDWARD F. DUNNE, of counsel,) for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal upon a certificate of importance from a judgment of Branch "C" of the Appellate Court for the First District. The history of the various transactions between appellant and appellee prior to the filing of the bill herein, and a statement of the action of the chancellor, are accurately stated in the opinion of the Appellate Court, as follows:

"On December 20, 1907, appellant, Harry L. Hollister, filed his bill in equity against the appellee, Marie L. Sobra, in the superior court, alleging, in substance, that on June 28, 1895, he entered into an agreement with appellee, which agreement was negotiated by Jos. R. Putnam & Co., as agents for appellee, by certain letters addressed to appellant and appellee and accepted by them, as follows:

" '*Mr. H. L. Hollister, Chicago.*        " 'CHICAGO, *June 28, 1895.*

" 'DEAR SIR—We are authorized to make you the following proposition for the exchange of properties, to-wit: We will give you the premises at No. 1907 Michigan avenue (residence) clear of all encumbrances, except an existing mortgage of twenty-two thousand dollars, ($22,000,) and taxes of 1895. You to give her 50 lots in the city of DesMoines, subject to a mortgage of $2500, and the taxes of 1895, and $6000 (six thousand dollars) in cash.
" 'Yours truly,        Jos. R. PUTNAM & Co.
" 'I accept the offer.—H. L. Hollister.'

" '*Mrs. L. Sobra.*                    " 'CHICAGO, *June 28, 1895.*

" 'DEAR MADAM—We are authorized to make you the follow-
ing proposition in exchange for your premises known as No. 1907
Michigan avenue, viz.: We will give you fifty (50) lots in the
city of DesMoines, Iowa, subject to a mortgage of $2500 at five
per cent per year, running five years from the date; also will give
you $5000 in cash and assume the mortgage of $22,000 on the
premises No: 1907 Michigan avenue. Each party will assume the
taxes of 1895 upon the property received by each.

" 'Very respectfully,    Jos. R. PUTNAM & Co.

" 'I accept the above offer.—Marie Leonie Sobra.'

"The bill further alleges that at the time of making said
agreement appellant was a resident of Lansing, Michigan,
and was not the owner of the fifty lots in the city of Des-
Moines mentioned· in said agreement, but had a bond for a
deed for the title to said lots and was negotiating the clos-
ing of an agreement for the purchase of the same, with
the belief and expectation that within a reasonable time he
would be able to convey the same to appellee in accord-
ance with and within a reasonable time after said agree-
ment was made; that appellant then stated said facts to
appellee and to her said agents, and they then well knew
and were fully informed by appellant that he could not im-
mediately consummate said agreement, but that some time
would necessarily elapse, and that considerable time might
elapse, before he would be able to convey said lots, and
that he was not informed or advised that there was any
occasion for a speedy consummation of said agreement;
that at the time of entering into said agreement appellee
stated to appellant and to her said agents that she was the
owner in fee simple of the property at No. 1907 Michigan
avenue, subject only to an encumbrance of $22,000, and
that there were no other or further encumbrances thereon;
that the appellant, relying on said statements and believing
them to be true and not then and there having any knowl-
edge or means of knowledge of their falsity, entered into
said agreement; that within a few days after the making

of said agreement, to-wit, in July, 1895, appellee stated to appellant that she had deposited with the said Jos. R. Putnam & Co., in escrow, a good and sufficient deed of conveyance conveying the fee simple title to the said property at 1907 Michigan avenue to him, and that said deed would be held by said Putnam & Co., to be delivered to appellant as soon as he should place with said Putnam & Co. a like deed of conveyance of the said fifty lots in DesMoines to appellee, and frequently from time to time thereafter appellee demanded that appellant carry out said agreement, but appellant was unable to comply therewith by reason of the contemplated delays in procuring title to said lots; that by reason of said delay, on November 20, 1895, appellee, still alleging she was able, ready and willing to perform her part of the agreement and that said deed was still in the hands of her said agents ready to be delivered to appellant, which said deed would convey to him fee simple title to No. 1907 Michigan avenue, subject only to an encumbrance of $22,000, claimed and pretended that she was damaged by reason of the alleged unreasonable delay in the sum of more than $10,000, and then and there threatened to sue appellant to recover the said damages, but finally offered to compromise, as she called it, her alleged damages with appellant by giving appellant six months' additional time in which to carry out his part of said contract, she in the meantime leaving said deed to appellant in escrow with said Putnam & Co., to be delivered to appellant as soon as, and when, he delivered a good and sufficient deed to her conveying said fifty lots in DesMoines, provided the appellant would execute and deliver to said Putnam & Co., in escrow, the promissory note of appellant for $10,000, payable to the order of appellee, due six months after date, to be returned to appellant on delivery of a good and sufficient deed from him to appellee of the said fifty lots in DesMoines at any time before the maturity of said note, and on default therein by appellant said note to be delivered by said Put-

nam & Co. to appellee on the maturity thereof, as liquidated damages alleged to have been sustained and to be sustained by appellee; and finally, in acceptance of said offer, appellant, still being unable to acquire title to the said lots in DesMoines and fearing suit by appellee to recover said alleged damages, did then and there, on November 26, 1895, make and execute his certain promissory note for $10,000, payable to the order of appellee, due six months after date, with interest at the rate of six per cent per annum after due, and did then and there deposit the same with said Putnam & Co., to be held by them and delivered at the maturity thereof to appellee in liquidation of her alleged damages sustained and to be sustained, provided appellant had not in the meantime been able to make the conveyance of said fifty lots to appellee; that the said note was executed by appellant in good faith and upon the representations of appellee that she had complied with the agreement of June 28, 1895, and that she was then and there ready, able and willing to convey to appellant the fee simple title to said premises at No. 1907 Michigan avenue, in accordance with said agreement. The bill further alleges that when said note matured appellant was unable to convey the said fifty lots to appellee, and thereupon, over the objections of appellant, said Putnam & Co., on May 28, 1896, delivered the said note to appellee, and then and there stated to appellant that appellee had complied with and performed, and was then and there, and at all times had been, ready and willing to comply with and perform, and then and there pretended to offer to appellant to comply with and perform, her part of said agreement, and then and there pretended to tender and offer to appellant the said deed of said premises No. 1907 Michigan avenue; all of these statements and representations made by the said appellee and said Putnam & Co. appellant believed, relied upon and accepted as being made honestly and in good faith; that the said Putnam & Co. were the agents of appellee and not the agents of appellant,

and no fee or commission of any kind was paid or promised by appellant to the said Putnam & Co.

"The bill further alleges that appellant having failed to pay said note at maturity, appellee, on June 26, 1896, brought suit thereon in the superior court of Cook county, Illinois, and appellant believing that appellee had complied with her part of the said agreement of June 28, 1895, and relying on her statements in that behalf, did not defend said suit but allowed the same to go by default, and on July 26, 1896, judgment was entered against appellant and in favor of appellee for $10,075 and costs of suit; that appellant was unable to pay said judgment at that time or any part thereof, and after an execution had been issued and returned unsatisfied, appellee filed a creditor's bill, based upon said judgment, against appellant and others; that during the year 1902 appellant, still believing that appellee had always acted in good faith, made several payments, aggregating $530, on account of said judgment; that thereafter appellee filed two several creditor's bills against appellant and others; that a period of seven years having elapsed since the entry of said judgment and appellant having only been able to make the payments on account of said judgment as aforesaid, and nothing having been realized thereon through said creditor's bills, appellee, on April 30, 1904, started suit in the superior court to revive said judgment; that appellant, not knowing of the facts hereinafter alleged, was not able successfully to defend said suit to revive said judgment, and on January 23, 1906, a judgment of revivor was entered in said court in favor of appellee and against appellant; that on July 23, 1906, appellee filed in the said superior court a fourth creditor's bill against appellant and others, based upon the said judgment, which said creditor's bill is still pending and undetermined in said court; that since the last creditor's bill, appellant, during the year 1907, made several payments, aggregating $2200, on account of said judgment.

"The bill further alleges that on or about November 1, 1907, through a suit brought by appellee against Joseph R. Putnam, concerning the dealings between appellee and said Putnam with reference to the agreement of June 28, 1895, appellant discovered and learned for the first time that all of the acts and doings of appellee and all her material statements in connection with said agreement were deceitful and fraudulent, and that appellee then knew, and ever since had known, that the same were deceitful and fraudulent, and that it was then, and since, the purpose of appellee to obtain the money of appellant through deceit and fraud. The bill then alleges the facts so coming to his knowledge on November 1, 1907, and which were previously unknown to him, as follows: That appellee did not make, execute and deliver a good and sufficient deed of conveyance of said premises at No. 1907 Michigan avenue and place the same with said Putnam & Co. within a few days after June 28, 1895, as she stated and represented to appellant she had done, but that said alleged deed of conveyance was not delivered to said Putnam & Co. until on or about August 26, 1895; that when said alleged deed of conveyance was delivered to said Putnam & Co. on or about August 26, 1895, the same showed that there was an encumbrance on said premises at No. 1907 Michigan avenue amounting to at least $6120.34 in excess of the said sum of $22,000 which said appellee had represented to appellant was the sole and only encumbrance thereon; that on June 28, 1895, when appellant entered into the said agreement with appellee, the premises at No. 1907 Michigan avenue had been foreclosed for an indebtedness of appellee, and the time for redemption by appellee had almost expired, and did expire on July 24, 1895, and that at the time when appellee executed said alleged deed of conveyance and delivered the same to Putnam & Co., on or about August 26, 1895, she had no right, title or interest whatsoever in said premsies at No. 1907 Michigan avenue. The bill further alleges that appellee is

wholly insolvent, and prays that she may be perpetually enjoined from collecting said judgment from appellant, and from having any execution issued thereon, and from taking any steps, of any kind or nature whatsoever, toward the collection of the said judgment; that the said judgment may be set aside, canceled and set at naught and declared null and void; that appellee may be perpetually enjoined from further prosecuting the said creditor's bill pending in the superior court; that appellee may be ordered, adjudged and decreed to pay to appellant the sums of money so paid by him to her on account of said judgment, with interest at the rate of five per cent per annum on each of said payments from the time the same were made, etc.

"An injunction was awarded appellant in accordance with the prayer of the bill. Thereafter appellee interposed a demurrer to the bill and also filed her motion to dissolve the injunction. The demurrer to the bill was overruled and the motion to dissolve the injunction was denied. Appellee then answered the bill, denying its material allegations, and to such answer appellant filed his general replication. Appellee then further filed her suggestion of damages for wrongfully suing out the injunction. The cause having been heard by the chancellor upon the pleadings and proofs, a decree was entered, wherein it was ordered and adjudged (1) that the injunction was wrongfully sued out and the same be dissolved; (2) that appellee had sustained damages thereby in the sum of $1250, which she should recover from appellant; and (3) that the bill be dismissed for want of equity. The decree is predicated solely upon a finding by the chancellor that as the records were open to appellant, whereby he might have ascertained the condition of the title to the premises known as No. 1907 Michigan avenue at the time judgment was entered against him upon the note, he should have presented his defense at that time, and that his failure to then present his defense constituted a bar to the relief sought by the bill."

· The Appellate Court reversed that part of the decree awarding appellee $1250 as damages and affirmed the decree in all other respects.

The bill for injunction is based upon the alleged fraud of appellee in connection with the execution of a note and the transactions occurring prior thereto. All the facts alleged as constituting fraud were either matters of public record or facts which could have been ascertained by appellant by the exercise of ordinary diligence. There is no allegation of fraud in connection with the assumpsit suit which resulted in the judgment. The rule is well established that the fraud for which a judgment may be enjoined in equity must be in the procurement of the judgment. If there be fraud entering into the cause of action which vitiates it, that is a defense which must be interposed in the action at law unless the party has been prevented from interposing the defense by fraud. (Freeman on Judgments, sec. 489.) While equity will relieve from a judgment obtained through fraud, accident or mistake, still the party invoking the interposition of equity must be free from negligence. Appellant has no standing in a court of equity for relief against this judgment, first, because, if the facts existed as stated in his bill, it was his duty to present them as a defense to the action at law unless he was prevented from doing so by some accident, fraud or mistake for which he was in no way responsible; and second, the allegations of fraud do not seek to impeach the law proceeding which resulted in the judgment. These general principles are sustained by *Kretschmar* v. *Ruprecht,* 230 Ill. 492, and cases there cited. There was no error in dismissing appellant's bill.

Appellee has assigned for cross-error the action of the Appellate Court in reversing that part of the decree awarding her $1250 damages. The total amount of the judgment, with interest, sought to be enjoined, after allowing all credits, was $13,500.24. The court awarded damages

in the sum of $1250, which was $100 less than ten per cent of the amount of the judgment. It is apparent that the damages were awarded upon the theory that the award was governed by section 8 of the act to revise the law in relation to injunction, in force July 1, 1874, (Rev. Stat. 1874, p. 579,) and that there is a distinction in the application of that section and section 12 of the same act in the award of damages upon the dissolution of an injunction. The question to be determined here is, whether the provisions of one or both of these sections apply in making the award of damages where an injunction restraining the collection of a judgment has been dissolved, and in case said section 12 has no application, whether the method pursued in this case was in conflict with the provisions of said section 8.

Said sections 8 and 12 are as follows:

"Sec. 8. Before an injunction shall issue to enjoin a judgment, the complainant shall give bond to the plaintiff therein, in double the amount of such judgment, with sufficient surety approved by the court, judge or master, conditioned for the payment of all moneys and costs due to the plaintiff in the judgment, and such damages as may be awarded against the complainant in case the injunction is dissolved. If the injunction be dissolved in the whole or in part, the complainant shall pay, exclusive of legal interest and costs, such damages as the court shall award, not exceeding ten percentum, on such part as may be released from the injunction."

"Sec. 12. In all cases where an injunction is dissolved by any court of chancery in this State, the court, after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require, and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same: *Provided,* a failure so to assess

damages shall not operate as a bar to an action upon the injunction bond."

Section 8 was first enacted, in substance, in 1819, as section 17 of the Chancery act. (Laws of 1819-21, p. 173.) By that section it was provided that if an injunction to restrain the collection of a judgment should be dissolved in whole or in part the complainant should pay six per cent, exclusive of legal interest, besides costs. In the revision of 1827 that part of said section 17 relating to injunctions to stay judgments at law was enacted as section 11 of the chapter on *ne exeat* and injunctions, and provided: "If the injunction be dissolved in whole or in part, the complainant shall pay, exclusive of legal interest and costs, such damages as the court shall award, not exceeding ten percentum on such part as may be released from the injunction." It will be noted that that part of the section just quoted is identical with the conclusion of said section 8 of the present act on injunctions. This section was again re-enacted in the revision of 1833, and again in 1845, and was incorporated in its present form in the revision of 1874. Said section 12 was first enacted in 1861, in substantially its present form, as section 1 of an act in relation to damages in case of injunction. (Laws of 1861, p. 133.) In the revision of 1874 said section 1 was re-enacted as section 12 of the Injunction act, said sections 8 and 12 being by that revision made parts of the same act.

It has been repeatedly held that the act of 1861 did not repeal the act of 1845. This question first arose in *Roberts* v. *Fahs,* 36 Ill. 268, in which it was held that the former act was not repealed, but that it must govern in suits brought to enjoin the collection of judgments. In *Shaffer* v. *Sutton,* 49 Ill. 506, it was again held that the act of 1861 did not repeal the act of 1845, but was designed to provide for a class of cases not embraced within the act of 1845. In some of the earlier cases we also had occasion to pass upon the nature of the act which has been preserved as the

present section 8 of the Injunction act and to define the procedure required by that act. In *Shaffer* v. *Sutton, supra,* where the injunction was dissolved on final hearing, it was held that under the act of 1845 no suggestion of damages was necessary to afford a basis for the award or to apprise the opposite party of the character or nature of the claim for damages, out of what it arises or how the party has been injured. It was there pointed out that the amount enjoined furnished the extent of the claim and that the provisions of the act of 1861 did not apply. In *Smith* v. *Powell,* 50 Ill. 21, it was held that it was proper to assess damages under the act of 1845 without suggestions in writing being first filed setting forth the nature and amount of the damages claimed and without hearing any evidence on that point, and that the act of 1861 did not apply in assessing damages upon the dissolution of an injunction restraining the collection of a judgment. In *Forth* v. *Town of Xenia,* 54 Ill. 210, it was again held that the act of 1861 did not repeal the act of 1845 but was designed to provide for a class of cases not embraced within that act, and further, that by the act of 1845 injunctions to restrain the collection of judgments at law were alone provided for, in which cases it was not necessary to make suggestions in writing or to offer any testimony on the question of damages, as the amount of the judgment enjoined was apparent from the papers.

The argument of appellant proceeds upon the theory that the damages to be awarded in cases arising under said section 8 are to be as compensation for damages actually sustained rather than as a penalty, and that therefore the provisions of section 12 should apply, and that section 8 simply limits the maximum amount which can be awarded at ten per cent of the amount due on the judgment sought to be enjoined. We are not unmindful of the fact that courts of equity do not favor the enforcement of either penalties or forfeitures, but where a statute requires the infliction of

a penalty by a court of equity it will be done. When the substance of said section 8 was first enacted, in 1819, it contained a provision for the infliction of a penalty which was arbitrarily fixed at six per cent. Thereafter each statute dealing with this subject provided that damages should be awarded in a sum not exceeding ten per cent of such part of the judgment as might be released from the injunction. It is evident that this was not intended as compensation for damages which the judgment creditor had sustained in being restrained from collecting his judgment and in procuring a dissolution of the injunction. It might frequently happen that the judgment would be so small that the maximum of ten per cent, when awarded as damages, would be grossly inadequate as compensation for the actual damages sustained. Suppose in this case that the judgment enjoined had been for the sum of $100 or $500. Ten per cent of the judgment would fall far short of compensating appellee for the damages she had sustained, yet under said section 8 that would be the full extent of the award which the court is empowered to make. It would appear that the legislature intended, from the first enactment on this subject, that the provision for the award of damages was intended as a penalty to be imposed upon a judgment debtor who wrongfully sued out an injunction to restrain the collection of the judgment against him. Such was the view of this court in its earlier decisions. The holdings in *Shaffer* v. *Sutton, supra, Smith* v. *Powell, supra,* and *Forth* v. *Town of Xenia, supra,* could have been arrived at on no other theory. The damages awarded by the chancellor in this case were less than ten per cent of the judgment, and being within the amount prescribed by the statute were properly awarded.

Our attention has been called to *Reed* v. *New York Exchange Bank,* 230 Ill. 50. While we are reluctant to overrule a case laying down a rule of procedure, it is apparent that that case is in conflict with the holdings in the earlier cases of *Shaffer* v. *Sutton, supra, Smith* v. *Powell, supra,*

and *Forth* v. *Town of Xenia, supra.* Upon further consideration we are convinced that the earlier cases lay down the correct rule and should be followed, and we now express our disapproval of anything said in *Reed* v. *New York Exchange Bank, supra,* which is not in harmony with those cases and with the views herein expressed.

The judgment of the Appellate Court reversing the decree, in so far as it allowed damages, is reversed and the decree of the superior court allowing said damages is affirmed. The judgment of the Appellate Court in other respects is affirmed.

*Affirmed in part and reversed in part.*

Mr. JUSTICE VICKERS, dissenting.