| 142 | 171 |
| 151 | 344 |
| 142 | 171 |
| 159 | 533 |
| 142 | 171 |
| 58a | 46 |
| 142 | 171 |
| 60a | 506 |
| 142 | 171 |
| 82a | 184 |
| 142 | 171 |
| 89a | 1550 |
| 142 | 171 |
| 94a | 5591 |

THE CHICAGO ATTACHMENT COMPANY

*v.*

THE DAVIS SEWING MACHINE COMPANY.

*Filed at Ottawa June 20, 1892.*

1. STATUTE OF FRAUDS — *verbal assignment of a lease — liability of assignee.* The actual occupancy of leased premises, and payment of the rent to the lessor for part of the unexpired term, by an assignee, pursuant to a contract of assignment with the lessee, which is not in writing, is not sufficient to exempt such assignment from the operation of the Statute of Frauds, where the assignee vacates before the term expires, and is sued for subsequently accruing rent.

2. The lessees of an unexpired term made a verbal assignment thereof, and put their assignee in possession, who paid the rent to the original lessor for about a year, when he ceased to occupy the premises and refused to pay the rents thereafter, and the lessor brought suit against him for the subsequently accruing rents: *Held,* that the Statute of Frauds was a bar to the action.

3. SAME—*not necessary the action shall be brought on the parol contract to make the defense available.* It is not necessary, in order that the statute shall avail as a defense to a suit, that the action be brought on the contract, but it is enough that the effect of the action is to charge the party against whom it is brought, by means of the contract.

4. SAME—*applies to sale of leasehold interest where remainder is more than one year.* The language of the statute is not limited to the creation of an estate, but includes any contract for "the sale of * * * any interest in or concerning" lands "for a longer term than one year." It includes the sale by the tenant of the remainder of his term, provided only that the remainder is for a longer term than one year.

5. SAME—*effect of part performance.* In a court of law, part performance does not take a case out of the operation of the Statute of Frauds. It is otherwise in a court of equity.

6. SAME—*must be pleaded if relied on in defense.* As the Statute of Frauds does not make absolutely void all oral contracts for an interest in land, but only makes them voidable, the party relying upon the statute as a defense must plead the same or in some way set it up on the trial, or he will be deemed to have waived the defense.

7. LEASEHOLD — *assignment distinguished from a lease.* An assignment of a term of years is the transfer of the whole estate of the tenant therein to a third person, and differs from a lease in this: that by the latter the lessor grants an estate less than his own, reserving to himself a reversion, but by an assignment he parts with the whole property.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. S. WILLIAMSON, Judge, presiding.

This was assumpsit for rent, brought in the Cook circuit court by the Davis Sewing Machine Company, appellee, against the Chicago Attachment Company, appellant. The former recovered judgment for $2788.59, and the judgment was affirmed in the Appellate Court.

On April 28, 1882, appellee leased to Walter Scates and John M. Griest the fifth and sixth floors of the building numbered 46, 48 and 50 East Jackson street, in Chicago, for a term of five years, extending from May 1, 1882, to April 30, 1887, at a rental of $137.50 per month. It was stated in the lease that the premises were demised "to be used for the manufacture of sewing machine attachments, or any business not objectionable to the owner of the building, and for no other purpose whatever." The lessees were partners, under the firm name of Scates & Griest, and also used the trade name of "The Chicago Attachment Company," and engaged in the business, upon the leased premises, of manufacturing and selling attachments for sewing machines. On February 9, 1883, Griest disposed of his interest in the firm to Thomas S. Ridgway, and made to Ridgway a bill of sale, in which it was specified that he, Griest, sold and delivered to said Ridgway all the interest of him, said Griest, in the goods, chattels, patents, inventions, credits and property, of every description, of or belonging to the Chicago Attachment Company and Scates & Griest, etc. At the same time a written contract was entered into by Ridgway, Scates and Griest, from which it appears, among other things, that Ridgway and Scates intended to form, as soon as practicable, a joint stock corporation for the purpose of continuing and carrying on said business, to be called the "Chicago Attachment Company." The contemplated corporation was not organized until July 2,

1883. In the meantime the business was carried on upon the premises in question by Ridgway & Scates, as successors to Scates & Griest. They found they did not require all of both floors for their business, and, retaining the sixth floor and an office in the north-east corner of the fifth floor, they, on March 23, 1883, sublet, by formal lease, to H. J. Edwards & Sons, the residue of said fifth floor, for a term beginning April 1, 1883, and ending April 30, 1884, at a rental of $60 per month.

Upon the organization of the appellant corporation, on July 2, 1883, it adopted a resolution to the effect that it would receive from said Ridgway and said Scates, in full payment for the shares of stock subscribed by them, respectively, "the machinery, tools, fixtures, materials, merchandise and property, of all descriptions, owned by them jointly, and used by them in their business of manufacturing sewing machine attachments at their shops on the fifth and sixth floors of the building known as numbers 46, 48 and 50 East Jackson street, together with all the patents owned by them jointly, concerning sewing machine rufflers, tuckers and hemmers; also, all inventions and improvements in said attachments in which they are jointly interested; also, the good will of their said business, and all contracts concerning said business and said attachments now held by them jointly, all of which said business and good will and property thereof is of the value of $49,600." It also passed a further resolution, directing its president and secretary, upon the execution and delivery of proper instruments assigning and conveying said property, to issue to Ridgway certificates for two hundred and forty-eight shares of paid-up stock, and to Scates certificates for two hundred and forty-eight shares of paid-up stock, in said company.

On July 11, 1883, said Ridgway and said Scates made a bill of sale to the corporation. Said bill of sale made specific mention of the different articles sold. It contained no words of general description, and it made no specific mention of the lease from the Davis Sewing Machine Company to Scates &

Griest, but it specified "one lease to H. J. Edwards & Sons, dated March 23, 1883, leasing the fifth floor of building Nos. 46, 48 and 50 Jackson street, Chicago, at rate of $60 per month, until April 30, 1884." Upon the execution of this bill of sale, certificates for the shares of capital stock mentioned in the resolutions of the corporation were issued to Ridgway and to Scates, respectively.

H. J. Edwards & Sons, under the sub-lease to them, entered into possession of that portion of the fifth floor demised to them, and paid rent to Ridgway & Scates to July 1, 1883, and paid rent to the appellant, the Chicago Attachment Company, from the last mentioned date until the expiration of the sub-lease, on April 30, 1884. Upon the original lease was endorsed a consent to an assignment of the lease to appellant, and also the words proper for an assignment of the lease, but neither of these was signed by any one, and so they were, in fact, mere blank forms for those purposes, which were never used.

From and after the date of its organization, until the latter part of June, 1884, the appellant occupied and used the sixth floor and the office on the fifth floor of the building, and was engaged in carrying on therein its business of manufacturing and selling attachments for sewing machines. From February 10, 1883, to July 1, 1883, the rents accruing to the Davis Sewing Machine Company for the entire premises, under its demise of April 28, 1882, were paid by Ridgway & Scates, and from and after July 1, 1883, and until July 1, 1884, such rents were paid by appellant. In the latter part of June, 1884, the appellant removed its property from and ceased to occupy the premises, and refused to pay any further rents therefor. The judgment which was rendered in the case at bar was for rents which accrued under the lease executed by appellee and by Scates & Griest, for a portion of the term subsequent to the time that appellant ceased to be in actual possession of the demised premises or any part thereof.

The case was tried by the court without a jury, and the following written propositions, submitted at the trial by appellant, the court refused to hold as law applicable to the case, to-wit:

"*First*—The court holds that the bill of sale from Scates & Ridgway to defendant shows on its face, and by necessary implication, that no interest or estate in the premises in question, other than the rent to be paid by Edwards & Sons, was or was not intended to be assigned to defendant.

"*Second*—In the lease from plaintiff to Scates & Griest the lessees covenanted not to assign or sublet, and an assignment or subletting by them was made a cause of forfeiture. The court is bound to construe the documents and facts shown in evidence as being consistent with said covenant and condition, if said documents and facts admit of such construction. The court therefore holds that the *status* of defendant on said premises was that of a licensee, merely—that defendant stayed there and transacted its business by the permission of the lessees, and paid for such privilege or permission by paying, on behalf of the lessees, what the lessees were bound to pay under the lease, and that defendant never had any estate in said premises as assignee of said term.

"*Third*—The court holds that actual occupancy of leased premises, and payment of rent to the lessor for part of the unexpired term, by an assignee, pursuant to a contract of assignment with the lessee, which is not in writing, is not sufficient to exempt such assignment from the operation of the Statute of Frauds, where the assignee vacates before the term expires and is sued for subsequently accruing rent.

"*Fourth*—The facts, if they are shown by the evidence, that defendant, with the knowledge and consent of plaintiff and the lessees, and under an express or implied verbal contract of assignment with the lessees, went into possession of the premises in question in July, 1883, continued in possession until about July, 1884, paying the rent to the lessor in the mean-

time, as provided in the original lease, and then vacated the premises, and thereafter had nothing more to do with the same, are not sufficient to take the case out of the Statute of of Frauds. Such facts do not constitute such an execution or performance of the contract of assignment as will do away with the necessity of proof that such assignment was in writing, as required by said statute."

Judgment was rendered in favor of the appellee, for the amount of rent stipulated to be paid by the lease, for the term between the abandonment of the premises by appellant and the termination of the term of the lease, and that judgment was affirmed by the Appellate Court for the First District, on appeal to it by the present appellant. This appeal is from that judgment.

The errors assigned bring before the court the questions discussed in the opinion.

Messrs. Abbott, Oliver & Showalter, for the appellant:

A verbal assignment of a lease of a term exceeding one year is within the Statute of Frauds. *Butemere* v. *Hayes,* 5 M. & W. 459; *Smart* v. *Harding,* 15 C. B. 652; Reed on Statute of Frauds, sec. 766; Browne on Statute of Frauds, (4th ed.) secs. 230, 272; *Briles* v. *Pace,* 13 Ired. L. 279; *Benton* v. *Schultz,* 31 Minn. 312; *Logan* v. *Barr,* 4 Harr. 546; *Railroad Co.* v. *Railway Co.* 85 Ill. 214; *Albertson* v. *Ashton,* 102 id. 56.

It has been repeatedly held in this State that a litigant can not be charged on an unwritten lease where the term is longer than one year, and the fact that the tenant may occupy the premises and pay rent for a portion of the time does not prevent the operation of the statute. There can be no occasion for a different rule where the contract of transfer is an assignment instead of a lease. *Creighton* v. *Sanders,* 89 Ill. 544; *Warner* v. *Hale,* 65 id. 395; *Wheeler* v. *Frankenthal,* 78 id. 124.

As an assignee is liable to the reversioner by reason of his occupation, only, and not by virtue of any privity of contract,

it is not necessary for him to show that he has divested himself of the paper title or legal right,—it is enough that he is not in possession during the time for which the rent is claimed. Taylor on Landlord and Tenant, sec. 453; *Bliss* v. *Gardner,* 2 Bradw. 424; *Bedford* v. *Terhune,* 30 N. Y. 454.

In the bill of sale there are no general words. Everything transferred is specifically named. *Cook* v. *Oakley,* 1 P. Wms. 301.

In view of the necessary legal effect of the two bills of sale, when construed in connection with the original lease, appellant could not have had any estate in the premises, as assignee or otherwise. Scates & Griest, or one of them, was personally on the premises most of the time while appellant's business was being transacted there. The possession of the premises was, in law, at all times in Scates & Griest. The *status* of appellant was that of a licensee, merely. *Handcock* v. *Austin,* 14 C. B. 638.

Part performance will not take the case out of the Statute of Frauds in a court of law. *Swanzey* v. *Moore,* 22 Ill. 65; *Warner* v. *Hale,* 65 id. 394; *Creighton* v. *Sanders,* 89 id. 544; *Wheeler* v. *Frankenthal,* 78 id. 124.

Messrs. BRYAN & HATCH, for the appellee:

The Statute of Frauds has no application where the contract of assignment is performed within a year.

Even under the English statute relating to leases the assignee need not sign the assignment. His acceptance of the instrument by which the estate passes devolves upon him the performance of the covenants running with the land. *Sanders* v. *Partridge,* 108 Mass. 556; *Babcock* v. *Scoville,* 56 Ill. 461; Taylor on Landlord and Tenant, sec. 450.

The lease in controversy was the property of the firm of Scates & Griest, and was assigned in writing by Griest to Ridgway, and by Scates & Ridgway to appellant.

The clause in a lease prohibiting an assignment without permission of the lessor can be taken advantage of only by the lessor, and he may waive it. *Webster* v. *Nichols*, 104 Ill. 171; *Fisher* v. *Deering*, 60 id. 114; *Willoughby* v. *Lawrence*, 116 id. 11.

Payment of rent by the defendant to plaintiff, when the defendant has been let into possession by the original lessee, is *prima facie* evidence of the assignment of the whole term. 3 Phillips on Evidence, 466; *Bedford* v. *Terhune*, 30 N. Y. 454.

Even if the assignment in this case was a parol assignment, it having become executed, the Statute of Frauds can have no application. *Webster* v. *Nichols*, 104 Ill. 160; *Bliss* v. *Gardner*, 2 Bradw. 422.

In *Swanzey* v. *Moore*, 22 Ill. 63, the court holds, "a parol contract which is required by statute to be in writing is as binding as any, when performed." See, also, *James* v. *Morey*, 44 Ill. 352; *Hayward* v. *Gunn*, 82 id. 390. These cases state the general rule.

Even if the contract is completely executed *on one side* at the time of making it, and all that remains to be done on the other side is the payment of money, then the Statute of Frauds will not apply, merely on the ground that the money was not to be paid within one year.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Scates & Griest are liable to appellee for the payment of the rent in controversy, for that is their contract with appellee; but appellant never made any contract with appellee for its payment, and if it is liable to pay appellee therefor, it can only be so because of privity of estate between it and appellee, resulting from its being assignee of the remainder of the term of Scates & Griest during the time that the rent in controversy accrued. The bill of sale from Scates & Ridgway to the appellant omits reference to the lease from appellee to Scates & Griest, and there is no other writing purporting to transfer that

lease to appellant.   There is, it is true, a recital in that bill
of sale that it includes "all of the right, title and interest in
and to a certain contract entered into by John M. Griest, of
Chicago, Illinois, and ourselves, on the 10th day of February,
1883; also, our lease to H. J. Edwards & Sons, dated March
23, 1883, leasing the fifth floor of the building," etc.   But
the contract between John M. Griest and Ridgway & Scates,
of the 10th of February, 1883, does not purport to transfer
from Griest to Ridgway & Scates any leasehold interest.   It
simply refers to a sale by Griest to Ridgway of his interest, as
partner of Scates, in certain property, not enumerating any
leasehold, and then expresses the mutual undertakings of
Griest to render certain personal services, on the one part,
and of Ridgway & Scates to compensate him therefor, upon
the other part.   The sale of the lease to H. J. Edwards &
Sons does not purport to include a term after the expiration
of their term, and, manifestly, affects nothing but rights under
that lease.   Moreover, it would seem from the blank forms of
consent of the landlord and assignment by the lessees, written
upon the back of the lease, that the matter of an assignment
of the lease, in writing, must have been present to the minds
of the parties, and it is a reasonable conclusion that the
omission of the requisite signatures to those forms was be-
cause the parties finally determined to not assign the lease in
writing.   It is therefore clear, that, as a matter of fact, the
lease was not assigned in writing, and it follows that if the
first proposition which the trial court refused to hold, had been
limited to what appears upon the face of the bill of sale from
Scates & Ridgway, and other writings in evidence, it should
have been marked "held;" but since it was not thus limited,
its refusal was not error.

The third and fourth propositions, which the court was
asked "to hold" were, however, pertinent under the evidence,
and therefore the real controversy in the case is, whether
those propositions correctly announce the law applicable to

the case, for the affirmance of the judgment of the circuit court by that of the Appellate Court requires us to accept as established facts in the case that there was a parol assignment of the lease by Scates & Ridgway to appellant, payment of the consideration therefor by appellant to Scates & Ridgway, and acceptance of the payment of rent, after such parol assignment, by appellee from appellant, as it became due under the lease, during the period of appellant's occupancy of the premises.

It is enacted in the second section of our statute entitled "Frauds and Perjuries," (chap. 59 of the Revised Statutes of 1874; 1 Starr & Curtis, p. 1192,) that "no action shall be brought to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them, for a longer term than one year, unless such contract, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized in writing, signed by such party." This section was pleaded by appellant as a defense to the suit, and it is not necessary, in order that it shall avail as a defense to a suit, that the action shall be brought on the contract,—it is enough that the effect of the action is to charge the party against whom it is brought, by means of the contract. *Corrington* v. *Roots*, 2 M. & W. 248; *Reed* v. *Lamb*, 6 Exch. 130.

The language of text books puts it beyond doubt that, in legal contemplation, a leasehold is "an interest in or concerning lands." Coke upon Littleton, 345 b; Williams on Personal Prop. (3d Am. and 5th Lond. ed.) 50, *2; 1 Washburn on Real Prop. (2d ed.) 9; Bishop on Contracts, 1292; 3 Am. and Eng. Ency. of Law, 164. And so we have expressly held, in suits between landlord and tenant, that this section includes leases of terms for more than a year. *Lake* v. *Campbell*, 18 Ill. 110; *Strehl* v. *D'Evers*, 66 id. 78; *Creighton* v. *Sanders*, 89 id. 543.

The language of the section not being limited to the *creation of an estate,* but including every *contract for* "*the sale* of * * * any interest in or concerning" lands "for a longer term than one year," would seem, as clearly as it is possible for language to express that idea, to include the sale by the tenant of the remainder of his term, provided, only, that remainder is for a longer term than one year. An assignment of a term is the transfer of the whole estate of the tenant therein to a third person, and differs from a lease in this: that by the latter the lessor grants an interest less than his own, reserving to himself a reversion, but by an assignment he parts with the whole property. Taylor on Landlord and Tenant, (2d ed.) sec. 426; *Sexton* v. *Chicago Storage Co.* 129 Ill. 318. And so it is said in Browne on the Statute of Frauds, (sec. 41,) speaking of the English Statute of Frauds of 29 Charles II: "If the statute were entirely silent as to assignments they could not in reason be made verbally of such terms as require a writing to create them, for if, as is clear, the statute against creating a parol lease applies to those which are carved out of a term as well as out of the inheritance, it can not be that a termor can assign his whole interest verbally when he could not underlet a part of it without writing." See to like effect, also, Reed on Statute of Frauds, sec. 766.

In *Briles* v. *Pace,* 13 Ired. L. 279, the question was whether, under statutes of North Carolina prohibiting leasing, subject to certain restrictions, unless in writing, verbal assignments of terms, subject to like restrictions, were prohibited, and it was held that they were, the court, among other things, saying: "It is next to be observed, that the creation of a term by the owner of the inheritance, of a greater duration than three years, and the transfer of such a term by contract, stand precisely on the same reason as to the danger of fraud and perjury in claiming under them. Therefore, it is natural that they should be placed on the same footing in the statute, and the act, as a remedial one, should be construed as thus placing

them, if the words will allow it. The words in these statutes, in truth, embrace the transfer of terms, as well as the creation of them. They are, that all contracts to sell or convey land, or any interest in or concerning it, shall, with one exception, be void unless in writing. Now, a term for years is not only an interest, but it is an estate, in land, and therefore a contract to assign a term is a contract to sell and convey land. Besides, it is a mistake to suppose that the statute, in respect to the creation of terms, embraces only those created immediately out of the inheritance, for it speaks of all contracts for lands, which include, of course, all leases, created in any manner, other than those of three years or under, which are expressly excepted. Therefore, if a termor underlets the premises, or a part of them, for part of the term, so as to leave a reversion in himself, that is a new term created out of the former, it is within the words of the act, and if it be for more than three years it must clearly be in writing. The inference, then, seems irresistible, that such a long termor can not assign without writing, for it would impute an absurdity to the legislature to suppose a writing indispensable for a termor to pass a part of his estate, while he is allowed to pass the whole by an assignment by word of mouth."

In *Potter & Co.* v. *McGowan*, the Supreme Court of Rhode Island hold that an oral assignment of a term is prohibited by language in their statute which prohibits the sale of "lands, tenements and hereditaments, and the rights thereto and interests therein," unless in writing. This, it will be seen, is no more comprehensive than the language of our statute, and the court, speaking of it, after quoting it, said: "This, it seems to us, relieves the question of any doubt, and makes it incumbent upon us to hold that our statute extends to contracts for the sale of leasehold interests." In *Johnson* v. *Reading*, 36 Mo. App. 306, and in *Hunt* v. *Coe & Wells*, 15 Iowa, 197, there was like ruling.

This then brings us to the question :—this being an action at law, and the Statute of Frauds being pleaded as a defense thereto, do the facts that Scates & Ridgway orally assigned the remainder of their term to appellant, that appellant paid them therefor and took possession of the premises, at the time, pursuant to such oral assignment, and that appellant thereafter paid appellee the rent for the premises, as provided by the lease to be paid during the time it thereafter occupied the premises, which payment of rent was accepted by appellee, constitute a valid assignment of the term, and so take the case out of the Statute of Frauds, and free it of all influence therefrom ?

In *Curtis* v. *Sage,* 35 Ill. 22, and *Worden* v. *Sharp,* 56 id. 104, it was held that where deeds of real estate have been executed and delivered to and accepted by the purchasers under oral contracts, and nothing remains to be done under the oral contracts but to pay the consideration agreed to be paid for the conveyances, the Statute of Frauds can not be interposed as a defense to an action at law brought to recover such consideration, and this for the reason that, so far as the oral contracts were contracts for the conveyance of land, they had been fully executed. But here there is no deed or other writing, or memorandum or note of the contract to assign, executed by the lessees and delivered to and accepted by appellant, which can have the effect to divest the lessees and invest appellant with the title to the term; and since, as against the plea of the Statute of Frauds here interposed, the title to the term can not pass, pursuant to contract, unless that contract, or some memorandum or note thereof, shall be in writing and signed by the lessees, this parol contract of assignment is not executed. In the cases cited, had no deeds been executed and delivered and accepted, although everything else might have been done which was required to be done by the oral contract, it is manifest the contract, so far as it was a contract for the sale of real estate, could not have been held

to be executed, since no title could have passed; and the writing is here just as indispensable to the passing of the title to the term, as the deed was there to the passing of the title to the land.

In courts of equity it is held, that under certain circumstances part performance of a contract will take a case out of the Statute of Frauds; but this is in courts of equity, only, and the doctrine is unknown in courts of law, where the Statute of Frauds is pleaded as a defense to an action upon an oral contract. In actions at law, as was said in *Hite* v. *Wells,* 17 Ill. 90, "the Statute of Frauds is an iron rule, found necessary to the protection of property, requiring more certain evidence of this kind of contract than in other cases, and, like all general rules, is occasionally hard in its operation, yet, while it is the plain law of the land, it is the duty of the courts to enforce its provisions." And, therefore, in *Warner* v. *Hale,* 65 Ill. 395, where suit was brought to recover rent on a verbal contract leasing a dock for a term of more than one year, and the Statute of Frauds was pleaded and relied upon as a defense, we held that the facts that appellee was let into possession of the premises under the contract, and occupied them a while and paid rent pursuant to the verbal contract, did not take the case out of the statute, and that there could therefore be no recovery under the contract, and that the only remedy of the lessor was under a *quantum meruit,* for use and occupation. And in *Fleming* v. *Carter,* 70 Ill. 286, where there was a verbal contract for the sale of land which was fully performed by the purchaser, who was let into possession under the contract, and ejectment was subsequently brought by the vendor against the purchaser, we held that these facts were no defense to the action of ejectment, and it was said in the opinion then filed: "In a court of law, part performance does not take a case out of the operation of the statute. It is otherwise in a court of equity, where the part performance has been to the extent here claimed." And, quite recently, in *Dougherty*

v. *Catlett*, 129 Ill. 431, assumpsit was brought by appellant, against appellee, to recover the consideration of a certain oral contract for the sale and surrender by appellant to appellee of an equitable interest in certain lands.    Appellant averred full performance of the contract on his part.    Appellee pleaded the Statute of Frauds, to which appellant demurred, contending, in support thereof, that his performance took the case out of the statute.    The circuit court overruled the demurrer and held the plea good, and we sustained that ruling, holding that the rule contended for by the appellant in that case was applicable only in equity.    Analogous ruling was likewise made in *Wheeler* v. *Frankenthal*, 78 Ill. 122, and in other cases to which we have no present reference, and we are unable to recall any ruling of this court to the contrary.

But counsel insist, that in *Webster et al.* v. *Nichols et al.* 104 Ill. 160, we held that an oral contract of assignment of a term for more than one year was executed by delivery of possession of the term pursuant to the contract, and performance of the terms of the contract in other respects, although there was no deed or other written conveyance of the term, or note or memorandum in writing, of the contract of assignment;—and, so we did; but that ruling can have no application here, for several reasons.    In the first place, there the assignee had enjoyed the entire term,—the suit was not, as here, to recover rent for a term during which the premises were not actually occupied by the party against whom the recovery is sought.    In the second place, that was a bill in equity—not an action at law, as is this.    In the third place, the question whether the contract of assignment was obnoxious to the Statute of Frauds was not presented to the court nor passed upon by the court in that case.    There, Nichols and others, owners of the reversion, filed their bill in equity, charging therein, as amended, among other things, that Abiah Webster was assignee of a term that had been let to Gage; that she had, as such, occupied the premises during the remainder of the term,

and praying that she be decreed to account, and that the amount which should be found to be due upon such accounting be decreed to be a lien on certain real estate that had been conveyed to her, as provided by the terms of the lease to Gage. The answer denied that Abiah Webster was assignee of the term of Gage, as charged in the bill. It denied that consent was given by the landlord to the lessee to assign the term, and insisted that by virtue of the terms of the lease there could be no lawful assignment of the term without such consent, and it was also denied that the lease was renewed, as alleged in the bill. But the Statute of Frauds was neither pleaded specially nor referred to in the answer; nor was it insisted upon by demurrer or exception or by objection to the admission of evidence. What was said in the opinion had reference only to the questions then before the court, and which had been discussed in the respective arguments of counsel.

That at common law, before the enactment of the Statute of Frauds, terms for years in lands could be created and transferred without any writing, is too familiar to require the citation of authorities; and it has been the ruling of this court that our Statute of Frauds does not render the contract within its terms absolutely void, but voidable, only. (*Wheeler v. Frankenthal et al. supra.*) And it has also been many times held by this court, that the court is not authorized, of its own motion, merely, to invoke the protection of the Statute of Frauds for a party who does not plead it or in some way expressly rely upon it during the trial, and that where it is not pleaded or in some way expressly relied upon during the trial, it will be deemed to be waived, and the case must be considered and decided without reference to it. *Thornton v. Heirs of Henry*, 2 Scam. 218; *Tarleton v. Vietes*, 1 Gilm. 470; *Lear v. Chouteau et al.* 23 Ill. 39; *Hull v. Peer et al.* 27 id. 312; *Finucan v. Kendig*, 109 id. 198; *Gordon et al. v. Reynolds*, 114 id. 118; *Walters v. Walters*, 132 id. 467. And so in that case we not only did not, but we were not authorized to,

consider what effect the Statute of Frauds would have had upon the case had it been pleaded or otherwise specially relied upon in defense.

We have been referred by counsel for appellee to *Dewey* v. *Payne*, 19 Neb. 540, and *In the Estate of John H. Wiley*, 12 Phila. 152, as holding differently from the conclusions we have reached in this case. But these decisions, as shown by the opinions in the cases, are made upon the ground that part performance takes the contract out of the Statute of Frauds, which, we have seen, is true in this State only in equity.

It necessarily follows from the views that we have expressed, that, in our opinion, the trial court erred in refusing to hold the third and fourth written propositions as asked, and that the Appellate Court therefore erred in affirming the judgment of that court.

We have availed of the opportunity afforded by the petition for rehearing filed by appellee, not only to carefully reconsider the questions decided in our opinion last filed, but also to restate, in different language, the reasons which have occurred to us as necessitating the reversals of the judgments below as then announced. The present opinion will take the place of and be published in lieu of that formerly filed.

The rehearing is denied.                    *Rehearing denied.*