(No. 22433.—

H. E. WACKERLE, Defendant in Error, *vs.* LOUIS NIES *et al.*—(LOUIS NIES, Plaintiff in Error.)

*Opinion filed February 15, 1935—Rehearing denied April 3, 1935.*

Shaw, J., dissenting.

Winston, Strawn & Shaw, (Harold A. Smith, and Frank B. Gilmer, of counsel,) for plaintiff in error.

Edward D. Feinberg, for defendant in error.

Mr. Justice Herrick delivered the opinion of the court:

H. E. Wackerle, defendant in error, (hereinafter called the plaintiff,) filed his amended statement of claim in the municipal court of Chicago against Louis Nies, Walter J. May and William E. Swink (hereinafter called the defendants). Nies and May filed separate affidavits of merits. The cause was submitted to the court without a jury. The issues were found against the defendants, the plaintiff's damages were assessed at $9974.67, and judgment for that sum and costs was rendered. Nies prosecuted an appeal

to the Appellate Court for the First District, where the judgment was affirmed. (*Wackerle* v. *Nies,* 273 Ill. App. 609.) The record is brought here by Nies on writ of *certiorari.* .

The allegations of the amended statement of claim are, in substance, that on August 14, 1930, the plaintiff sold to the defendants seventeen oil and gas leases at an agreed price of $11,000; that on that day the defendant Nies paid $1500 on the purchase price and orally agreed to pay the remaining $9500 in three installments, the first and second of $2500 each and the third of $4500, on or before the 20th days of September, October and November, 1930, respectively; that it was agreed the plaintiff should make delivery of such leases by delivering assignments thereof to Walter J. May, one of the defendants, as assignee, which delivery should be made by forwarding the leases and assignments to the Sheridan Trust and Savings Bank in Chicago on or before August 20, 1930; that delivery was so made; that at the time of the sale and purchase of such leases the defendants entered into the possession of the leased lands and began the exploration thereof for oil and gas by drilling a well thereon; that they are now in possession of such leases and the assignments thereof; that the plaintiff has performed and consummated the sale on his part but the defendants have failed and refused to pay the balance of the purchase price.

The defendant Nies by his affidavit of merits denied that he, either jointly or severally, entered into a contract, either oral or written, for the purchase of the leases mentioned in the statement of claim, or that he agreed such leases should be assigned or delivered to May, or that he entered into possession of the lands described in the leases, or that he owes any part of the sum demanded by the plaintiff. He also set up the Statute of Frauds, asserting that each of the promises alleged by the plaintiff was one to answer for the debt of another or involved a sale of

goods or choses in action of the value of $500 or upward; that nothing was done or suffered by Nies to subject him to liability, and that in no instance was the alleged promise or agreement, or some memorandum or note thereof, in writing and signed by him or some other person by him thereunto lawfully authorized.

The plaintiff testified that on August 13, 1930, the three defendants, together with one Brannon, an oil-well driller, called upon plaintiff at his office in Edna, Kansas, and there had a conversation about oil and gas lands; that defendants requested the plaintiff to show them the gas lands; that Brannon, Nies, May and Swink went with the plaintiff and drove over the properties covered by the leases here involved; that after making an inspection of the properties the parties returned to the office and negotiations were then had between them for the purchase of the leases, covering approximately 2240 acres; that the plaintiff asked $12,000 for the leases and Nies offered $10,000, and that the parties finally agreed upon $11,000 as the price which defendants agreed to pay. The plaintiff further testified that Nies stated, in substance, that he wanted May to take the property in his name and instructed the plaintiff to assign the leases to May, and that Nies wanted a contract drawn between the plaintiff and May. Accordingly a written contract was prepared under date of August 14 reciting the sale of the leases to May at the price of $11,000, $1500 of which was paid in cash and the remainder to be paid in installments as hereinbefore stated. Nies paid the $1500 on that day by his personal check payable to the plaintiff. He also made a contract with the plaintiff by which the plaintiff agreed to move a drill-rig to the property within forty-eight hours and drill the premises under the supervision of Brannon. The plaintiff moved the drill on the property as agreed and the property was drilled by the defendants. The leases and the assignments were forwarded to the Sheridan Trust and Savings Bank at Chicago and

delivered to May, the bank sending to the plaintiff the three notes of May representing the deferred installments recited in the written contract.

There was offered in evidence a writing bearing date of August 27, 1930, made and executed by the three defendants. This writing recites that the three parties, on or about August 14, 1930, made a verbal contract among themselves to purchase for their joint benefit certain oil and gas leases covering 2240 acres in Labette county, Kansas, from H. E. Wackerle, and states the terms and conditions of the purchase, which are substantially the same as testified to by Wackerle as being the terms of the oral contract and as set out in the writing between May and Wackerle. The contract further recites: "Whereas the said Louis Nies did advance the sum of two thousand dollars ($2000) on behalf of himself and the said W. E. Swink and Walter J. May to cover the said first payment of fifteen hundred dollars ($1500) and the costs of drilling said well, and had the said purchase contract executed in the name of said Walter J. May and the said well-drilling contract executed in the name of Louis Nies," etc. The writing states that May held the leases for the benefit of himself and the other two defendants and sets forth at length the details of the mutual agreement between the three defendants concerning such leases.

The defendant Nies testified that the three defendants met Brannon in Kansas City and the four persons called upon the plaintiff at his office and talked over the matter of the gas properties, and Nies made the plaintiff a proposition to drill the property for one-half of the plaintiff's interest; that he refused, and that Nies then told him that he (Nies) was not interested in the property if it meant a cash investment; that Nies left the conference; that later May came out to see him and told him that he (May) had bought the property; that Nies then told May that he was not interested and did not want to sign any papers;

that he then went to Wackerle's office and told him he wanted to see the May contract and wanted to know if Wackerle had got Nies' name in the contract, to which Wackerle replied that he had sold the property to May. Nies says he took the contract and read it over particularly to see that his name was not mentioned in it; that he made the payment of $1500 at May's request because he was indebted to May for about $2100. Nies says he saw the leases and notes at the Sheridan Trust and Savings Bank; that he looked at the notes to see if his name was on the notes and that it was not. He testified that he never read the contract of August 27, 1930, before he signed it and that he never got a copy of it. He later admitted he did have a copy of it and that he had loaned it to May. He says he did not read the contract while it was in his possession, and did not know the contract stated that May held the title to the leases for the benefit of the three defendants.

The point is made by the defendant Nies that there is a variance between the statement of claim and the proofs; that the evidence shows a written contract by which the leases were sold to May, and that May gave his notes for the purchase price. Nies alleges that if the plaintiff has a remedy it is against May. Nies misconceives the plaintiff's cause of action. The plaintiff's testimony tended to establish his case, and also tended to prove that the written contract was made between him and May at the request of Nies. The case presented is not one where the mutual oral promises of the parties are merged in a written contract. The written contract of August 14 was not executed by the three defendants and the plaintiff. There was no integration of the oral contract by the writing of August 14, 1930. The instrument executed by the three defendants under date of August 27 recites that the parties had a verbal agreement among themselves to purchase the leases, and that the purchase contract therefor had been executed in the name of May at the request of the defend-

ant Nies. Not infrequently a plaintiff has a cause of action which may be stated in several different ways. Here the plaintiff could very properly have framed a statement of his claim upon the written contract of August 14, alleging that May executed the same, and the notes accompanying it, on behalf of the three defendants, either as a partnership or as joint adventurers. The fact that recovery might have been had upon an apt statement of the cause of action based upon the writing of August 14 did not preclude the plaintiff from maintaining a suit upon the original oral promises made by the defendants to pay for the property sold. The plaintiff is not limited to a personal action against May. The statement of claim was broad enough to permit a recovery against the defendants. While there was a conflict between the defendant Nies and the plaintiff as to what was said in the negotiations concerning the sale of the leases in question, it was for the trial court to determine the credibility of the witnesses and what weight and credit he would give to the testimony of such witnesses. The Appellate Court has concurred in the facts as the same were determined by the trial court.

The defendant Nies urges there is a failure of the proof to support the statement of the claim. There was no such failure. In order to constitute a failure of proof, the material allegations, or some of them, as averred in the statement of claim or in the declaration, must be unproved in their entire scope and meaning. The evidence must fail to make a *prima facie* case. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Foland,* 88 N. E. (Ind.) 787; *Crim* v. *Thompson,* 112 Ore. 399, 229 Pac. 916; *Ryan Co.* v. *Russell,* 52 Mont. 596, 161 Pac. 307.

It is further urged by the defendant Nies that the plaintiff cannot recover in this suit until the notes given by May are surrendered. In our judgment there is a grave question whether this defendant is in a position to raise such issue in this court, by reason of the fact that he submitted

propositions of law to the trial judge which were passed upon by that court and no proposition requested raised the issue now presented here. However, we will treat the issue as though it had been properly preserved in the record.

The record shows the notes were produced by the plaintiff and delivered during the course of the trial to the judge who tried the case, and that the notes were thereafter offered in evidence by the defendant Nies. After the conclusion of the trial the trial court permitted the attorney for the plaintiff to take possession of the notes upon the assurance of the attorney in open court that nothing would be done with the notes until the court of review had passed on the case in the event an appeal should be taken from the judgment, and that, in so far as any liability of May was concerned, the defense of *res judicata* would be a perfect defense. No objection was made by Nies to the delivery by the court to the plaintiff's attorney of the notes in question. The notes are still subject to the control of the court notwithstanding the plaintiff's attorney may have the manual possession thereof. The trial court has the power to require the notes to be returned to the court or surrendered to May, and doubtless will make such order at the conclusion of the litigation.

The general rule which is ordinarily followd in this State is laid down in *Roland* v. *Fischer,* 30 Ill. 224, wherein the court said: "Where an action is brought upon an account for which a note has been given, the plaintiff can not recover unless he produces the note upon the trial and offers to deliver it up or shows that it has been lost or destroyed, and the reason is, that the law will presume that the note has been paid or put in circulation if it is not produced." In the case at bar the notes have been produced, are within the control of the court, and each had matured before the case was tried in the lower court. It is obvious that the purpose of the rule requiring the surrender of commercial paper by the plaintiff prior to the time of ob-

taining judgment on the original obligation is, that the debtor may be secure against any action which might be brought on such commercial paper by a *bona fide* holder in due course. No reason exists under the facts in the record, or as a matter of law, for the application here of the rule stated in *Roland* v. *Fischer, supra.*

The last point urged is that the contract declared upon is within section 2 of the Statute of Frauds. To sustain his position upon this issue the defendant Nies relies largely upon *Chicago Attachment Co.* v. *Davis Sewing Machine Co.* 142 Ill. 171. In that case the lessee of an unexpired term of more than one year of a written lease made an oral assignment thereof and put his assignee in possession of the premises. The assignee paid the rent to the original lessor for approximately twelve months and then vacated the premises. The original lessor brought suit against the assignee for installments of rents accruing after his removal from the premises. The defendant pleaded the Statute of Frauds. The court held the statute was a complete defense to the action. The case is readily distinguishable from the case at bar. There the lease provided for the payment of future unpaid installments of rent, payment of which had been promised by the original tenant. There was a bill of sale of the property in the leased premises made by the original tenant to his assignee, but there was no transfer, in terms, of the lease and no assumption in writing of the lease by the assignee. The suit was not based upon any original promise made by the assignee but was brought on the promise contained in the written lease, to which the assignee was not a party and which it was claimed the assignee had assumed. The debt was the debt of the original tenant. His assignee had never promised the lessor in writing to pay the matured installments, which were the debt of the original tenant, and the Statute of Frauds was applicable as a defense. Here the contract was fully performed on the plaintiff's part prior to the com-

mencement of the present suit. He had placed the title to and possession of the property sold in the defendant Nies and his associates and they had the benefit of their contract. The rule is that where there is a verbal contract for the sale of real estate or some interest therein, and the purchaser has received from the vendor the title to what the vendor orally contracted to sell, the Statute of Frauds is no defense in a suit brought by the vendor to recover the purchase price. *Knight* v. *Collings,* 227 Ill. 348; *MacDonald* v. *Crosby,* 192 id. 283; *Worden* v. *Sharp,* 56 id. 104; 27 Corpus Juris, sec. 431, p. 351.

We find in the record no prejudicial error against the plaintiff in error, and the judgment of the Appellate Court is affirmed. *Judgment affirmed.*

Mr. JUSTICE SHAW, dissenting.