H. E. Wackerle, Appellee, v. Louis Nies et al., Defendants. Louis Nies, Appellant.

Gen. No. 38,421.

Opinion filed June 22, 1936.

CHARLES A. PHELPS, GEORGE E. FITZGERALD and ROBERT C. SPRINGSGUTH, all of Chicago, for appellant.

EDWARD D. FEINBERG, of Chicago, for appellee.

MR. PRESIDING JUSTICE HALL delivered the opinion of the court.

This is an appeal from an order of the municipal court of Chicago dismissing the petition of Louis Nies, filed under section 21 of the Municipal Court Act, Ill. State Bar Stats. 1935, ch. 37, ¶ 409, by which he seeks to have a judgment of the municipal court of Chicago, entered against him on December 30, 1931, in the case of *Wackerle v. Nies et al.,* vacated and set aside. The suit in which the judgment was entered, was upon a claim that Nies, together with Walter J. May and W. E. Swink, were indebted to Wackerle on account of a contract to purchase certain oil leases. After the entry of the judgment of December 30, 1931, an appeal was taken to this court therefrom by Nies, and on December 31, 1933, the judgment was affirmed by this court. The judgments of this court and of the municipal court were reviewed by the Supreme Court, and the judgments of both courts were affirmed. This petition filed under section 21 of the Municipal Court Act is in the nature of a bill for review, and most of the matters set up as a reason for the vacation of the judgment entered in the cause have already been passed upon by this court, and by the Supreme Court, as a reference to the opinions in both cases will show.

The opinion filed here on appeal from the judgment involved, Gen. No. 35,876 (273 Ill. App. 609), was not published, and in order that a clear understanding be had of the matters then before this court, we quote the opinion in full, as follows:

"This is an appeal by Louis Nies from a judgment of the municipal court of Chicago against Louis Nies,

Walter J. May and William E. Swink, defendants in a proceeding brought to recover a balance claimed to be due under an oral agreement alleged to have been entered into between plaintiff and defendants for the sale by plaintiff to defendants of certain gas and oil leases in the state of Kansas. The third amended statement of claim upon which the cause was tried charges that on the 14th day of August, 1930, plaintiff sold to the defendants 17 oil gas leases for the sum of $11,000, on account of which defendants paid plaintiff $1,500 in cash and orally agreed to pay the balance in instalments of $2,500 on September 20, 1930, $2,500 on October 20, 1930, and $4,500 on November 20, 1930, together with interest at the rate of 8 per cent per annum from the time such deferred payments became due, until paid; that the assignments of such leases were to be made to the defendant, Walter J. May, and delivery of such assignments made by forwarding same to the Sheridan Trust & Savings Bank, Chicago, Illinois, on or before August 20, 1930. The statement of claim alleges that plaintiff did deliver copies of these leases, together with the assignments thereof, as agreed; that defendants entered into possession of the lands covered by the leases, and were in possession at the time the suit was instituted, and that the balances agreed upon had not been paid.

"By his separate affidavit of merits, the defendant, Louis Nies, denies that he entered into any oral or written contract with plaintiff, together with the other defendants or otherwise, for the purchase of these leases, or that he agreed to pay the sum mentioned in the statement of claim, or any other sum, or that he was ever a party to any contract, oral or written, by the terms of which defendant purchased, or agreed to purchase, any leases of any such lands, or that he entered into possession of the lands mentioned. This affidavit of merits further recites that the defendant,

Louis Nies, is not liable because the alleged oral promises, if made, constituted an agreement not to be performed within a year, were promises to answer for the debt of another, to wit:—Walter J. May, and were for the sale of goods and choses in action of the value of $500 and upwards, and, therefore, because of each of such defenses, the action of plaintiff is barred by the Statute of Frauds.

"H. E. Wackerle, plaintiff, testified that on August 13, 1930, the three defendants called upon him at his office in Edna, Kansas, and requested to be shown certain gas properties; that plaintiff, together with the defendants and a man named Brannon looked at the properties; that they returned to the office of the plaintiff and the defendant Nies made an offer of $11,000 for these leases and that the plaintiff agreed to accept that amount; that defendant Nies expressed a desire that defendant May act as trustee in the transaction, and that plaintiff was instructed to assign the leases to Mr. May, and that after the assignment was made the leases were to be sent to the Sheridan Trust & Savings Bank of Chicago, Illinois; that on August 14, 1930, he received a check on account from Mr. Nies for $1,500. The record shows that thereafter on the same date plaintiff and defendant May entered into what is called a sales agreement, which was signed by plaintiff and defendant May, in which it is recited that the party of the first part, meaning plaintiff, will sell, and the party of the second part, meaning the defendant May, will buy the oil and gas leases referred to for the price of $11,000, $1,500 in cash, the receipt of which is acknowledged by the agreement, the balance to be evidenced by three notes, one for $2,500 due September 20, 1930, one for $2,500 due October 20, 1930, and one for $4,500 due November 20, 1930, all of the notes to draw interest at the rate of 8 per cent after maturity, and that the assignment of the gas leases was to be delivered to the

Sheridan Trust & Savings Bank of Chicago, Illinois. These notes were executed by May, delivered to plaintiff, and the agreement and the notes are a part of the record herein.

"Thereafter on August 27, 1930, the three defendants, Louis Nies, Walter J. May and William E. Swink, entered into a written agreement between themselves, signed by each defendant, in which it is recited that on or about the 14th day of August, 1930, the three defendants had made a verbal agreement between themselves to purchase for their joint benefit certain oil and gas leases of lands located in Labette County in the state of Kansas from H. E. Wackerle of Edna, Kansas, upon certain terms and conditions; that defendant Nies had advanced the sum of $2,000 on behalf of himself and the other two defendants, $1,500 of which was to cover the first payment on such leases, the balance to be used in drilling a well, and that the purchase contract for these leases had been taken in the name of May, who held the leases for the benefit of himself, Nies and Swink. This agreement entered into between these three defendants contains the details of mutual arrangements and agreements between the three defendants concerning these gas land leases.

"Defendant Nies testified that on the 14th day of August, 1930, he and defendants, May and Swink and a man named Brannon, called upon the plaintiff, and at that time there was no partnership arrangement between Nies and defendants, Swink and May; that there was some conversation about the gas properties, and that Nies told plaintiff that he was not interested if it meant an investment of cash. Defendant further testified that he left the conference and that defendant May came out to him and told him that he, May, had bought the property, and that the defendant then told May he was not interested and would not sign any papers; that he then went to the plaintiff, asked to see

the contract entered into between plaintiff and defendant May, and there told plaintiff he would have nothing to do with the matter and that he was not interested. Defendant Nies further testified that at that time he was indebted to May in approximately the sum of $2,100, and that at May's request he drew a check for $1,500 to enable May to make the first payment due to plaintiff under the contract entered into between the plaintiff and May. Nies further testified that when he signed the agreement entered into between the three defendants on August 27, 1932, he was not aware of the fact that it contained recitations to the effect that these three defendants had entered into an oral contract concerning these leases, and that May held the title to the leases for the benefit of all three.

"The point is made by this defendant that plaintiff cannot recover until the notes given to plaintiff by May are surrendered. The record on these notes is that they were produced in court by plaintiff's attorney upon request of defendant Nies. The trial court permitted the notes to remain in the possession of plaintiff's attorney, with the following assurance given by him, to wit:

" 'Well, as far as our assurance is concerned, I give the Court the assurance that nothing will be done on these notes until the upper court has made a ruling on this case if the case should go up to the upper court, and as far as any other liability of Mr. May is concerned, the defense of res adjudicata would be a perfect defense.'

"Appellant's proposition is that where there is an action upon an account for which a note is given, the plaintiff cannot recover unless he produces the note upon the trial and offers to deliver it up, or shows that it has been lost or destroyed, and the reason is, that the law will presume the note has been paid or put in circulation if it is not produced. (*Roland v. Fletcher,*

30 Ill. 224.) In the instant case none of these presumptions are present. The notes in question were produced in court on the part of defendant Nies, and by the trial judge permitted to remain in the custody of plaintiff's attorney, pending this case. Further, we can see no possible situation arise where there can be any liability on these notes on the part of Nies.

"As to the defense of the Statute of Frauds, we have only this to say: The contract was fully performed on the part of the plaintiff, the down payment had been paid by the check of defendant Nies, and if he is liable at all, nothing remains to be done but pay the money. This defense has no merit. In *McDonald v. Crosby*, 192 Ill. 283, the Supreme Court said:

" 'As to the first, the demurrer was properly sustained on the ground that the contract declared upon was fully and completely performed upon the part of the plaintiff, and nothing remained to be done by the defendants but to pay the money. (*Curtis v. Sage*, 35 Ill. 22.) We do not understand under the rule in this state that the Statute of Frauds can be interposed as a defense where the contract is fully performed on the part of the plaintiff,—in other words, the Statute of Frauds cannot be availed of for the purpose of perpetrating a fraud.'

"The contract signed and executed by Nies and the other two defendants on August 27, 1932, contains an admission of the facts upon which plaintiff's case is based, and Nies cannot escape liability by the claim that he did not know what he was signing. There is not a suggestion in the record that his signature was obtained by fraud or duress.

"The judgment of the municipal court of Chicago is affirmed." See also *Wackerle v. Nies*, 359 Ill. 548.

The matter alleged in the petition to vacate the judgment, which petitioner states was not presented in the former trial, is to the effect that since the entry of the

judgment, petitioner has secured evidence, which is substantially as follows, as stated by defendant in his brief filed here: That Swink, one of the defendants in the original suit, and one of the parties to the contract referred to in the former opinion of this court, made between Louis Nies, Walter J. May and W. E. Swink, on August 27, 1930, and after the entry of the judgment in the municipal court, sought to obtain credit and secure loans on the claim of an ownership or interest of approximately $3,000 in the judgment in question; that on January 26, 1933, one P. D. Gates made a sworn statement in which Gates stated that he knew Swink; that he, Gates, had a conversation with Swink with reference to a suit pending in the Appellate Court of Cook county, and had advanced Swink some money; that the suit which was then pending in the Appellate Court had been decided against the party who was to pay the money; that Swink stated that his attorney expected a decision in his favor any day; that Swink mentioned Wackerle and May as parties to the lawsuit; that Gates stated in his sworn statement referred to, that, "He (meaning Swink) gave me a letter dated January 10, 1933. He signed the letter on my desk after having dictated it to me. He said there were three to share in the judgment, Wackerle, an attorney named Brightman, and himself"; that he (Gates) had a conversation with Swink the day after he received the letter, and that Swink was concerned that the letter would get to Mrs. Nies, and said that his attorney told him that if it did, he would lose the case; that the letter (from Swink to Gates) says: "Dear Mr. Gates: I hereby agree to reimburse you for loans made to me for moneys I have coming from the following sources . . . from a lawsuit now pending in the Cook County courts, in which judgment has been rendered against Louis Nies and others, in favor of H. E. Wackerle, from which I am to receive approximately

$3,000.'' Petitioner also alleges that May had agreed to testify that Wackerle's claim was without merit, and that he has since admitted, that in testifying differently in the original hearing, he had committed perjury.

The petition further alleges that the attorney Brightman referred to in the statement of Gates is the Brightman who swore to the plaintiff's statement of claim in the municipal court, and was the attorney for Wackerle in said cause; that May did undertake to organize the Labette Oil and Gas Syndicate to take over 2,000 acres of oil and gas leases, and secured the services of one Walsh as his attorney, to draft for him a syndicate agreement, which said Walsh prepared under date of September 2, 1930; that petitioner submits the affidavit of Walsh with a copy of the syndicate agreement; that Walsh states in his affidavit that he prepared the contract of August 27, 1930, from information received from Swink, Nies and May; that after the signing of the agreement he had several conferences with the parties; that under date of September 2, 1930, he prepared another agreement; that after the execution of the agreement of August 27, 1930, it appeared that the recitals in said contract as to the transactions had by them with Wackerle were incorrectly stated; that the first ''Whereas'' paragraph of the agreement of September 2, 1930, was modified to read as follows: ''Whereas, said Walter J. May owns or controls certain oil and gas leases covering two thousand acres (2,000) of land located in . . . Labette County in the State of Kansas, and has authorized said Louis Nies to enter into a contract with one H. E. Wackerle of Edna, Kansas, to drill a well thereon, . . .'' correctly stated the transactions as explained to him by them; that they explained to him that May had purchased the oil and gas leases and agreed to pay $11,000 therefor; $1,500 in cash; $2,500 by note Sep-

tember 20, 1930; $2,250 by note of October 20, 1930, and $4,500 by note November 20, 1930; that he had authorized Nies to enter into a well drilling contract with Wackerle for the drilling of a well or wells on 2,000 acres of the 2,240 acres; that $2,000 was paid on the contracts with Wackerle; that May intended to bring about the formation of a syndicate and to sell to the syndicate 2,000 out of the 2,240 acres; that the syndicate subscribers were to have a half interest in the 2,000 acres with May. Walsh says that it was represented to him that May did not have the $1,500 to pay Wackerle on the leases or the $500 on the drilling contract; that pursuant to prior transactions between May and Nies, Nies was obligated to pay to or for May certain moneys; that May induced Nies to advance $666.65 to him and pay the same to Wackerle; that Swink secured a loan of $666.65 from Nies, which was paid to Wackerle; that May induced Nies to advance $666.65, which May promised Nies would be repaid to him by the syndicate, and that the syndicate would pay him any additional moneys which he might pay out under the drilling contract with Wackerle. It is the claim of Nies that the items above mentioned are the subject matter of the contract entered into between Nies, May and Swink on August 27, 1932.

The petition also alleges that the supposed syndicate agreement of September 20, 1930, was accepted by May and used by him in his attempt to organize the Labette County Oil and Gas Syndicate; that May reported to Wackerle the action which had been taken to form the said syndicate and that he was endeavoring to secure the necessary moneys from the Texas Oil and Gas Syndicate to induce the members of the Texas Oil and Gas Syndicate to become members of the Labette County Oil and Gas Syndicate and to contribute the sum of $20,000 with which to pay May's notes due on the 20th of September, October and November, 1930; that pursuant to said statements, Wackerle extended

the time of the payment of said notes for May, and that Wackerle did not at any time expect Nies to pay said notes; that he never had any time prior to the institution of the suit requested the payment of the notes from Nies; also that the oil and gas well drilled under the drilling contract failed to produce either oil or gas in sufficient quantities with the result that the syndicate members refused to contribute or pay any amounts to May so that he could pay his notes to Wackerle, and that May defaulted in the payment of said notes; that thereafter said Wackerle, May, Swink and Brightman conspired together to secure the entry of said judgment on said fictitious claim. The petition also alleges that before and during the trial of the original case, Nies exhausted all reasonable efforts to discover and produce at such trial the evidence to disprove the plaintiff's statement of claim; that the evidence he now has he did not know existed; that the same has come to his knowledge and been secured by him since the rendition of said judgment; that said evidence, if introduced at a new trial, would produce a different result and show that the judgment is manifestly wrong.

Section 21 of the Municipal Court Act, Ill. State Bar Stats. 1935, ch. 37, ¶ 409, provides:

"That there shall be no stated terms of the municipal court, but said court shall always be open for the transaction of business. Every judgment, order or decree of said court final in its nature shall be subject to be vacated, set aside or modified in the same manner and to the same extent as a judgment, order or decree of a circuit court during the term at which the same was rendered in such circuit court: Provided, a motion to vacate, set aside or modify the same be entered in said municipal court within thirty days after the entry of such judgment, order or decree. If no motion to vacate, set aside or modify any such judg-

ment, order or decree shall be entered within thirty days after the entry of such judgment, order or decree, the same shall not be vacated, set aside or modified, excepting upon appeal or writ of error, or by a bill in equity, or by a petition to said municipal court setting forth grounds for vacating, setting aside or modifying the same, which would be sufficient to cause the same to be vacated, set aside or modified by a bill in equity: Provided, however, that all errors in fact in the proceedings in such case, which might have been corrected at common law by the writ of error *coram nobis* may be corrected by motion, or the judgment may be set aside, in the manner provided by law for similar cases in the circuit court.''

Petitioners here cite the case of *Sargent Co. v. Baublis*, 127 Ill. App. 631, in support of their contention. In that case, the defendant in a personal injury suit filed a bill to restrain the collection of a judgment obtained by the plaintiff. It appears that in that case the plaintiff, an employee of the defendant, had suffered an injury which resulted in the fracture of one of his legs, and that on the trial defendant offered in evidence a release of his claim signed by plaintiff, in which it is recited that he had received a certain amount of money in full settlement of his claim. On the trial, and in rebuttal, plaintiff denied that he had received the money, or signed a release, and that he was in a hospital and unconscious at the time the release was supposed to have been executed. The bill in the case recited that the complainant had searched to secure evidence that plaintiff had signed the release and was conscious at the time, and that he had made the settlement as alleged, and that he had been unable to find other evidence than that produced at the trial, that the testimony of the plaintiff in that case to the effect that he did not sign the document and did not receive the money which was supposed to have been

given, was untrue and perjury, and that definite and positive evidence of such fact could not be obtained until after the conclusion of the trial and after the entry of the judgment. The bill further alleges that thereafter plaintiff in that case had admitted that his testimony which was given as to the release was false and untrue, and that he had perjured himself when he testified as he did. Upon a hearing in the superior court of Cook county, the bill was dismissed for want of equity. Upon appeal to this court, the decree was reversed and remanded, and in its opinion, this court said:

"It is clear from the averments of the bill that appellee Baublis perpetrated a fraud upon appellant by means of his own perjured testimony, and that the fraud was practiced in the very matter of obtaining the judgment; and it must be regarded as perpetrated upon the court as well as upon appellant. The fraud shown could not have been litigated in the action in which the judgment was obtained, nor was it a matter of which appellant could avail itself in the court giving judgment. The case stated in the bill is thus brought squarely within the rule stated in *Marine Insurance Co. v. Hodgson,* 7 Cranch, 332, and Black on Judgments (2nd Ed.), sections 356 and 370, and Storey's Equity Jurisprudence (13 Ed.) sections 879, 885, 887, 896; and *Harding v. Hawkins,* 141 Ill. 572."

The petition by which Nies seeks to have the judgment vacated shows on its face that if he had been diligent, he could have produced at the trial evidence of the alleged facts, which he sets forth in his petition at the time the cause was originally heard in the municipal court. The language of the contract between Nies, May and Swink referred to in our former opinion, admits the facts on which Wackerle made his claim in the case as tried in the municipal court, and upon which the judgment was entered and affirmed by this court and the Supreme Court.

In *Kretschmar v. Ruprecht,* 230 Ill. 492, the Supreme Court said:

"It is immaterial to the decision of this case whether they had a valid defense or not. They had ample opportunity to present it if they had one, but without any reasonable excuse they neglected to do so. Equity will not relieve against a judgment at law except in cases of fraud, accident or mistake, and then only where the party applying for relief is free from all negligence. 'It is not enough that the judgment is unjust; it must have been obtained without negligence on the part of the appellant to entitle to relief.' (*Walker v. Shreve,* 87 Ill. 474; *Tallman v. Becker,* 85 id. 183; *Harding v. Hawkins,* 141 id. 572; *Ward v. Durham,* 134 id. 195; *Hahn v. Gates,* 169 id. 299; *Lucas v. Spencer,* 27 id. 15.) Even though appellees had no right to judgment . . . and no cause of action against appellants, . . . and had taken judgment for a greater amount than was due, yet appellants could not willingly or negligently permit such judgment to be taken and then be relieved from it in equity. False testimony given at the trial or false assertions as to liability are not grounds for setting aside a judgment (*Galena & Southern Wisconsin Railroad Co. v. Ennor,* 116 Ill. 55); nor is presenting a claim without disclosing a defense which may exist to it: (*Ward v. Durham,* 134 Ill. 195)."

In *Hollister v. Sobra,* 264 Ill. 535, in a situation very similar to that presented here, the Supreme Court held that a court of equity has no jurisdiction to relieve against a judgment, and said:

"The bill for injunction is based upon the alleged fraud of appellee in connection with the execution of a note and the transactions occurring prior thereto. All the facts alleged as constituting fraud were either matters of public record or facts which could have been ascertained by appellant by the exercise of ordinary diligence. There is no allegation of fraud in con-

nection with the assumpsit suit which resulted in the judgment. The rule is well established that the fraud for which a judgment may be enjoined in equity must be in the procurement of the judgment. If there be fraud entering into the cause of action which vitiates it, that is a defense which must be interposed in the action at law unless the party has been prevented from interposing the defense by fraud. (Freeman on Judgments, sec. 489.) While equity will relieve from a judgment obtained through fraud, accident or mistake, still the party invoking the interposition of equity must be free from negligence. Appellant had no standing in a court of equity for relief against this judgment, first, because, if the facts existed as stated in his bill, it was his duty to present them as a defense to the action at law unless he was prevented from doing so by some accident, fraud or mistake for which he was in no way responsible; and second, the allegations of fraud do not seek to impeach the law proceeding which resulted in the judgment. These general principles are sustained by *Kretschmar v. Ruprecht,* 230 Ill. 492, and cases there cited. There was no error in dismissing appellant's bill.''

We are of the opinion that the court was not in error in sustaining the motion to dismiss the petition. Therefore, the judgment of the municipal court is affirmed.

*Affirmed.*

HEBEL, J., and DENIS E. SULLIVAN, J., concur.